UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Pierce Division

Case No. 2:21mc14073-MARTINEZ-MAYNARD

Case Pending in the U.S. District Court for the Northern District of California:
*Sweet, et al. v. Zais [Rosenfeldt], et al.*, 3:19-cv-03674-WHA (N.D. Cal.)

IN RE SUBPOENA SERVED ON
ELISABETH DEVOS

_____

**EXPEDITED MOTION TO TRANSFER ELISABETH DEVOS'S MOTION TO QUASH TO THE NORTHERN DISTRICT OF CALIFORNIA AND INCORPORATED MEMORANDUM OF LAW**

Manuel J. Dominguez
FL Bar No.: 0054798
Email: jdominguez@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
11780 U.S. Highway One | Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401

Margaret E. O'Grady *(pro hac vice* pending)
Email: mogrady@law.harvard.edu
Rebecca C. Ellis *(pro hac vice* pending)
Email: rellis@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

## NOTICE OF EXPEDITED MOTION

PLEASE TAKE NOTICE THAT before the Honorable Magistrate Judge Shaniek Maynard, Theresa Sweet, Chenelle Archibald, Daniel Deegan, Samuel Hood, Tresa Apodaca, Alicia Davis, and Jessica Jacobson, representatives of the class certified in the underlying action, (the "*Sweet* Plaintiffs" or "Plaintiffs") will and hereby do move the Court pursuant to Rule 45(f) of the Federal Rules of Civil Procedure to transfer the Motion to Quash Rule 45 Deposition Subpoena (ECF No. 1) ("Motion to Quash") in this matter to the Northern District of California, to be heard by Judge William Alsup in the matter of *Sweet, et al. v. Zais, et al*., 3:19-cv-03674-WHA (N.D. Cal.). Plaintiffs' motion is based on this submission and the authorities cited herein.

The *Sweet* Plaintiffs request expedited treatment of this motion pursuant to Local Rule 7.1(d)(2), and request a ruling on or before February 23, 2021. A ruling on or before this date is necessary because the Motion to Quash is part of a larger set of discovery disputes that are ongoing in the Northern District of California, for which a hearing is scheduled for February 24, 2021. Clarity as to whether the Motion to Quash will be heard by the *Sweet* Court will facilitate management of these discovery disputes. The *Sweet* Plaintiffs are seeking to resolve these disputes prior to the due date for their opening brief in support of summary judgment, currently set for March 11, 2021.

The necessity for expedited disposition has not been caused by a lack of due diligence on the part of the *Sweet* Plaintiffs. The Motion to Quash was filed on February 8, 2021, and counsel for the *Sweet* Plaintiffs acted promptly in identifying local counsel, seeking *pro hac vice* admittance to this Court, and filing the instant motion. The *Sweet* Plaintiffs aver that they have made a bona fide effort to resolve this matter without the necessity of expedited briefing and have been unable to do so.

In the alternative, if the Court does not grant expedited treatment of this motion, the *Sweet* Plaintiffs respectfully request that the due date for their opposition to the Motion to Quash (currently set for February 22, 2021) be continued until seven days after the Court rules on Plaintiffs' Motion to Transfer.

Plaintiffs respectfully submit that oral argument is not necessary to resolve this motion.

## MEMORANDUM OF LAW

### I. INTRODUCTION

The *Sweet* Plaintiffs, on behalf of themselves and all others similarly situated, are a certified class of Plaintiffs who have been engaged in litigation against the U.S. Department of Education ("Department") and its Secretary (together, the "*Sweet* Defendants" or "Defendants") in the Northern District of California since June 2019. *See generally Sweet, et al. v. Zais, et al.*, No. 3:19-cv-03674-WHA (N.D. Cal.) (Alsup, J.). Until January 7, 2021, the former U.S. Secretary of Education, Elisabeth DeVos, was a named defendant in the *Sweet* case. On that date, Ms. DeVos abruptly resigned her position.

At the time of her resignation, the *Sweet* Plaintiffs were seeking to depose Ms. DeVos, pursuant to a discovery order the California court had entered in October 2020. *See generally* Order Denying Class Settlement, to Resume Discovery, and to Show Cause [hereinafter "Discovery Order"], *Sweet*, No. 3:19-cv-03674-WHA (N.D. Cal. Oct. 19, 2020), ECF No. 146 (appended hereto as Exhibit 1). On January 11, 2021, Plaintiffs filed a letter brief explaining why the deposition was justified. *See* Discovery Letter Brief re: Deposition of Former Secretary DeVos [hereinafter "DeVos Letter"], *Sweet*, No. 3:19-cv-03674-WHA (N.D. Cal. Jan. 11, 2021), ECF No. 171 (appended hereto as Exhibit 2). The court ruled on Plaintiffs' letter almost immediately, instructing that, due to the former Secretary's resignation, "if counsel pursues such deposition, it

2

must subpoena Ms. DeVos" as a private citizen. Order Re Discovery Letter and Related Matters [hereinafter "DeVos Order"], *Sweet*, No. 3:19-cv-03674-WHA (N.D. Cal. Jan. 12, 2021), ECF No. 172 (appended hereto as Exhibit 3).

Accordingly, the Plaintiffs served a deposition subpoena on Ms. DeVos, via the same counsel that has been litigating the *Sweet* case in California. The court in the Northern District of California has already considered related issues (and is in the process of actively managing other discovery disputes). That court is the appropriate forum for resolution of the former Secretary's Motion to Quash.

Pursuant to Federal Rule of Civil Procedure Rule 45(f), the *Sweet* Plaintiffs move to transfer Ms. DeVos's Motion to Quash to the Northern District of California, to be heard by the same judge that is managing the *Sweet* litigation. The circumstances of this case fit squarely within the definition of "exceptional circumstances," Fed. R. Civ. P. 45(f), as delineated by district courts across the country. *First*, deciding the Motion to Quash separately from the rest of the *Sweet* case threatens to disrupt the California proceedings. *Second*, deciding the Motion in this District would risk inconsistent rulings. *Third*, as Ms. DeVos's Motion makes clear, both the interpretation of Judge Alsup's prior orders and factual familiarity with the *Sweet* case will be key to resolving her Motion, and the issuing court is in a better position to address both factors. *Fourth*, and finally, transfer will impose no burden on Ms. DeVos or her counsel, particularly in light of federal courts' remote operations due to the COVID-19 pandemic, her representation by the same attorneys litigating the *Sweet* matter, and private counsel from a national law firm with an office in San Francisco.

For these reasons, and as detailed further herein, the *Sweet* Plaintiffs respectfully request that this Court transfer Ms. DeVos's Motion to Quash to Judge Alsup's docket in the Northern District of California.

## II. FACTUAL BACKGROUND

On June 25, 2019, the *Sweet* Plaintiffs filed a complaint against the Department and then-Secretary DeVos in the Northern District of California, alleging that the Defendants had violated Section 706 of the Administrative Procedure Act (APA) by unlawfully withholding or unreasonably delaying action on the *Sweet* Plaintiffs' applications for borrower defense to repayment of their student loans. *See* Complaint, *Sweet*, No. 3:19-cv-03674-WHA (N.D. Cal. June 25, 2019), ECF No. 1; Discovery Order at 4. The court certified a nationwide class of approximately 160,000 borrowers in October 2019. *See* Discovery Order (Ex. 1) at 4. The Department certified an administrative record a month later, and the parties cross-moved for summary judgment. *Id.* But before the court ruled on those motions, the parties entered into a settlement agreement. The court granted preliminary approval of the settlement on May 22, 2020. *Id.* at 5.

"Then came the snag." *Id.* Counsel for the *Sweet* Plaintiffs discovered that the Defendants had been issuing "alarmingly curt," pro forma denial notices to tens of thousands of class members, contrary to Plaintiffs' understanding of what was required by the settlement agreement and the APA. *Id.* This led Plaintiffs to seek an order from the court that the Defendants had breached the settlement agreement, even before final approval had been granted. *See id.* at 6. On October 1, 2020, hundreds of student loan borrowers attended the fairness hearing on the proposed settlement agreement (held over Zoom), and fourteen representatives selected by the court spoke about their "serious concern with the proposed settlement, particularly in light of the Secretary's recent string

of form denials." *Id.* Following the hearing, the court denied final approval of the settlement agreement, finding that there had been no "meeting of the minds" about what a "final decision" on a borrower defense application required. *Id.* at 10.

Going further, the court explained that, "[f]or eighteen months, the Secretary refused" to issue decisions on any borrower defense applications, "largely on the grounds that such answers required backbreaking effort and, thus, substantial time. Now, the Secretary has begun issuing decisions at breakneck speed. But most are a perfunctory 'Insufficient Evidence' — without explanation." *Id.* at 6. The court found that the Secretary's actions brought "cause for alarm," *id.* at 7, because "[b]orrowers cannot possibly understand why their applications have been denied. They do not believe the Secretary has reviewed their borrower-defense applications in good faith and do not know, realistically, how to proceed. It's no wonder borrowers are confused. The Secretary's perfunctory denial notice does not explain the evidence reviewed or the law applied. It provides no analysis. And, the borrower's path forward rings disturbingly Kafkaesque." *Id.* at 8. The court concluded that "[q]uestions of legality plague the Secretary's new perfunctory denial notice, and the circumstances of its use appear to contradict one of the primary justifications for her original delay." *Id.* at 11. Accordingly, the court ordered "an updated record and updated discovery to determine what is going on." *Id.*

Specifically, the court opened an expedited two-month discovery period, during which the *Sweet* Plaintiffs could "take both written discovery and up to five fact depositions of relevant decisionmakers to inquire into, broadly," three topics relating to the Department's actions with respect to borrower defense applications (briefly, "[t]he development and use of the form denial letters"; "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay"; and "[t]he extent to which the Secretary

5

has denied applications of students who have attended schools subject to findings of misconduct"). *Id.* at 16. The court also stated that "class counsel may not *yet* depose the Secretary," *id.* (emphasis added), but noted that "[e]xtraordinary circumstances, however — for example, if the Secretary has unique first-hand knowledge or necessary information cannot be obtained through other, less intrusive means — may justify such a deposition at a later date." *Id.* The court ordered the Plaintiffs to file a letter brief if they sought to expand or extend discovery. *See id.*

During the discovery period, the *Sweet* Plaintiffs deposed the current and former Under Secretaries of the Department, the current head of the Federal Student Aid division, and the current head of the Borrower Defense Unit. These four deponents consistently disclaimed responsibility for or personal knowledge of two out of the court's three discovery topics. Accordingly, on January 6, 2021, counsel for the *Sweet* Plaintiffs informed counsel for the Defendants that they would be filing a letter brief with the court to request leave to depose then-Secretary DeVos. Discovery to date had made it clear that, as the senior-most policy-setting individual at the agency during the relevant time period, Ms. DeVos had "unique first-hand knowledge or necessary information" that could not be — because it had not been — obtained through other, less intrusive means. *See* DeVos Letter (Ex. 2) at 1.

Ms. DeVos abruptly resigned as Secretary of Education the next day, on January 7, 2021. The *Sweet* Plaintiffs nonetheless sought the court's leave to depose her, as contemplated by the October 2020 discovery order. *See id.* On January 12, 2021, the court entered a brief order on Plaintiffs' letter brief: "The Court appreciates class counsel's request to depose Elisabeth DeVos, but the prior order restricted deposition of '*the Secretary*' . . . . It imposed no such restriction regarding Citizen DeVos. Now, given her new status, if counsel pursues such deposition, it must subpoena Ms. DeVos." DeVos Order (Ex. 3) at 1.

6

So that is what the *Sweet* Plaintiffs did. On January 13, 2021, the day after receiving the court's order, Plaintiffs' counsel emailed government counsel to inquire whether government counsel would accept service of a subpoena on behalf of Ms. DeVos. *See* Email from M. O'Grady to R. Merritt et al., dated Jan. 13, 2021 (appended hereto as Exhibit 4). The next week, on January 18, 2021, government counsel responded that they would accept service "if we can negotiate the subpoena's place of compliance." Email from K. Hancock to M. O'Grady et al., dated Jan. 18, 2021 (Ex. 4). Plaintiffs' counsel stated their understanding that the "place of compliance" would be over Zoom (as the other depositions in the *Sweet* matter had been). Email from M. O'Grady to K. Hancock et al., dated Jan. 19, 2021 (Ex. 4). Government counsel responded that "the former Secretary currently resides at her home in Vero Beach, Florida," and therefore they would "accept service of a subpoena noticing a Zoom deposition in Vero Beach, Florida." Email from K. Hancock to M. O'Grady et al., dated Jan. 22, 2021 (Ex. 4). On January 26, 2021, Plaintiffs served a deposition subpoena on Ms. DeVos, via government counsel, listing the place of compliance as "via remote technology, with witness located in Vero Beach, Florida." ECF No. 1-1.

On February 5, 2021, government counsel emailed Plaintiffs' counsel to state that they would be "filing our motion to quash Plaintiffs' subpoena for former Secretary DeVos in the Southern District of Florida in the near future." Email from K. Hancock to M. O'Grady et al., dated Feb. 5, 2021 (appended hereto as Exhibit 5). Pursuant to Rule 45(f), Plaintiffs' counsel sought government counsel's consent to transfer the motion to quash, once filed, to the Northern District of California. *See* Email from R. Ellis to K. Hancock et al., dated Feb. 5, 2021 (Ex. 5). Government

7

counsel refused.[1] *See* Emails from K. Hancock to R. Ellis et al., dated Feb. 5, 2021 and Feb. 8, 2021 (Ex. 5).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 45(f) provides that "[w]hen the court where compliance [with a subpoena] is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." The proponent of transfer bears the burden of showing that exceptional circumstances are present. *See* Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment.[2] Transfer is appropriate if the exceptional circumstances "outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*

"In determining whether 'exceptional circumstances' exist, courts consider several factors, including the 'complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'" *U.S. Plywood Integrity Coalition v. PFS Corp.*, No. 20-5042 BHS, 2021 WL 409968, at *3 (W.D. Wash. Feb. 5, 2021) (quoting *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)); *see also, e.g.*, *United States v. Roy*, No. 18-20898-MC, 2018 WL 1894731, at *3 (S.D. Fla. Mar. 21, 2018). "[T]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented

---

[1] At the time of this email exchange, Plaintiffs' counsel did not know the identity of Ms. DeVos's private counsel. Government counsel has since represented to Plaintiffs' counsel that, on the issue of transferring the motion to quash, they are empowered to speak on Ms. DeVos's behalf.

[2] "Courts applying Rule 45(f) routinely refer to the 2013 Note's language in determining its scope." *U.S. Plywood Integrity Coalition v. PFS Corp.*, No. 20-5042 BHS, 2021 WL 409968, at *2 (W.D. Wash. Feb. 5, 2021) (citing cases).

by the motion . . . ."[3] Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment; *see also Roy*, 2018 WL 1894731, at \*3-4; *Walgreen Co. v. Wyeth, Inc.*, No. 19-MC-60417-CIV, 2019 WL 2406338, at \*1 (S.D. Fla. Mar. 26, 2019). Some courts have found judicial economy to be a sufficiently exceptional circumstance. *See In re Managed Care Litig.*, No. 3:20-MC-00852-IM, 2020 WL 6044557, at \*4 (D. Or. Oct. 13, 2020) (citing Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2451 (3d ed.)). The "prime concern" in deciding whether transfer is warranted "should be avoiding burdens on local nonparties subject to subpoenas." *Id.* at \*3; *see also Roy*, 2018 WL 1894731, at \*3.

## IV. EXCEPTIONAL CIRCUMSTANCES JUSTIFY TRANSFER OF MS. DEVOS'S MOTION TO QUASH

Exceptional circumstances, as defined by the body of relevant case law, exist to justify transfer of Ms. DeVos's motion to the Northern District of California. Indeed, *all* of the circumstances support transfer; there is no supportable reason for maintaining this motion in the Southern District of Florida.

### A. Litigating the Motion to Quash Separately Will Disrupt the California Proceedings.

Litigating Ms. DeVos's Motion to Quash separately from the rest of the underlying litigation raises a significant risk of disrupting the California proceedings. The *Sweet* case is a "complex class action" that has been pending for over a year and a half. *Glob. Agility Sols., Inc. v. Barker*, No. 1:19-CV-987-TWP, 2020 WL 2494625, at \*2 (W.D. Tex. May 14, 2020) (transferring motion to quash to issuing court). Indeed, Ms. DeVos spends approximately half of the pages of her (over-length) memorandum reciting the procedural history and facts regarding discovery in the

---

[3] "Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment.

9

underlying litigation. The California court is actively managing ongoing discovery in the matter: for instance, there is a hearing on the *Sweet* Plaintiffs' motion to compel discovery from the *Sweet* Defendants scheduled for later this month. *See Sweet*, No. 3:19-cv-03674-WHA (N.D. Cal.), ECF Nos. 177, 179, 180.

Although Ms. DeVos is no longer a named party to the underlying litigation, the arguments in her Motion to Quash are "necessarily intertwined with" the *Sweet* case, as the question of whether she must sit for a deposition "requires a full understanding of the complexities of" the California litigation. *U.S. Plywood*, 2021 WL 409968, at *3. This is made apparent by former Secretary DeVos's arguments against her deposition. Specifically, she argues that Plaintiffs failed to use other, less intrusive means to obtain the information they seek; that her information is not relevant to the ultimate relief that Plaintiffs seek in the *Sweet* case; and that the deposition subpoena is an impertinent attempt at harassment. *See* Motion to Quash at 17-25. In support, she appends over 100 pages of exhibits, including deposition transcripts and written discovery responses, the volume of which emphasizes that "resolution of the motion . . . requires delving into substantive issues in the highly complex underlying litigation." *Fed. Home Loan Mortgage Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 43 (D.D.C. 2015). Her arguments are intertwined with issues already presented to the issuing court, which is "versed" in the "nuances" of the relevant factual and legal issues, and thus "better positioned to assess" the necessity of obtaining former Secretary DeVos's testimony, *CFA Inst. v. Am. Soc'y of Pension Prof'ls & Actuaries*, No. 1:20-MC-00018 (TNM), 2020 WL 1695050, at *2 (D.D.C. Apr. 7, 2020).

Under these circumstances, Ms. DeVos's Motion to Quash should be treated together with the other ongoing discovery disputes in the *Sweet* case. *See, e.g.*, *U.S. Plywood*, 2021 WL 409968, at *3 ("Not transferring the motion to quash . . . risks 'disrupting the issuing court's management

10

of the underlying litigation' and interfering with the discovery and resolution timeline . . . ." (quoting Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment); *Fed. Home Loan Mortgage Corp.*, 309 F.R.D. at 43 ("[N]othing in the Advisory Committee Note, or subsequent case law, precludes this Court from relying on other aspects of case management, such as impending discovery deadlines and case-specific issues, to transfer a subpoena-related motion."); *Glob. Agility Sols.*, 2020 WL 2494625, at *2 ("The underlying case has been on file since March 2019, and the court there has been immersed in the dispute for some time. . . . This Court, meanwhile, has no familiarity with the details of the case, the scope of discovery, or the special protection that may be required for certain evidence.").

### B.  Separate Litigation Risks Inconsistent Rulings.

Moreover, although the California court has not directly ruled on the validity of the January 26, 2021 subpoena to depose Ms. DeVos, it has already considered a related issue and been presented with some of the same arguments that Ms. DeVos raises in her Motion to Quash. The propriety and necessity of deposing Ms. DeVos has been contemplated by the court at least since October 2020, when Judge Alsup ordered expedited supplemental discovery in the *Sweet* case. *See* Discovery Order (Ex. 1) at 16.  In that order, Judge Alsup permitted the depositions of five Department officials, as well as written discovery, and noted that Plaintiffs could seek the deposition of the Secretary at a later date via letter brief. *See id.* After taking four depositions of Department officials and reviewing the Defendants' document production and written discovery, Plaintiffs requested via letter brief an order permitting the deposition of Ms. DeVos. In Plaintiffs' letter and its exhibits, Plaintiffs put before the California court the issues at the heart of the Motion to Quash: whether Ms. DeVos has unique, firsthand information that cannot be obtained from other sources. *See generally* DeVos Letter (Ex. 2).  The court responded that, due to the Secretary's

11

resignation, she could be subpoenaed directly as a private citizen. In short: Judge Alsup has already had this *very issue* before him.

"[N]umerous district courts have found exceptional circumstances" when motion practice "in the issuing court . . . raises similar arguments to those raised in the motion sought to be transferred." *E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, 2015 WL 12746706, at *3 (C.D. Cal. Oct. 23, 2015); *cf. In re Nonparty Subpoenas to PPG Indus., Inc.*, No. 2:20-MC-00296-RJC, 2020 WL 1445844, at *4 (W.D. Pa. Mar. 25, 2020) (granting transfer where "this Court's consideration of the merits of PPG's Motion to Quash presents the risk of a decision inconsistent with [the issuing court's] ruling . . . regarding the relevance of the Rule 30(b)(6) deposition at issue"). And with good reason: otherwise, subpoenaed parties would be encouraged to go forum-shopping, which is exactly what happened here. Plaintiffs' letter to the California court (Ex. 2) set forth Plaintiffs' legal and factual justification for taking the deposition of Ms. DeVos. Her Motion to Quash in this District is, in effect, a refutation of the arguments Plaintiffs made in the California court. Quite simply, the *Sweet* Defendants did not like the direction signaled by the California court's order, and went searching for a different outcome by filing what is essentially an opposition brief in another Court.

To make matters worse, Defendants have taken this opportunity to impugn the motives of Plaintiffs, baselessly accusing them of a "transparent attempt at harassment." Motion to Quash (ECF No. 1) at 25. This accusation is inappropriate and plainly inaccurate. The California court made clear in October 2020 that although "class counsel may not *yet* depose the Secretary" (emphasis added), extraordinary circumstances could justify the deposition at a later date. Discovery Order (Ex. 1) at 16. That later date has arrived — not because of improper motives on the part of 160,000 class members who have been "h[u]ng[] out to dry" by the Department, *id.* at

15, but because, as Judge Alsup found, "we are faced with a strong showing of agency pretext" and "[w]e need to know what is really going on." *Id.* Plaintiffs have determined, as they detailed in their letter to the California court in January, that Ms. DeVos has unique knowledge about the issues at the heart of this case. *See* DeVos Letter (Ex. 2) at 1-3. Seeking her deposition — precisely as the California court contemplated Plaintiffs might have cause to do after deposing other officials — is not only appropriate, but a necessary step to properly advocate for the interests of the class, who have suffered "shared trauma." Discovery Order (Ex. 1) at 17. While Ms. DeVos seeks to dismiss Plaintiffs' advocacy as a "PR campaign," Motion to Quash (ECF No. 1) at 25, the California court, after eighteen months of litigation, stated plainly that this is "not an attorney-driven case. Class members have a genuine interest; they sought opportunity via higher education only to be deceived by for-profit institutions and, at least in some cases, saddled with crushing debt." Discovery Order (Ex. 1) at 17.

### C. The Motion to Quash Requires Interpretation of the Issuing Court's Prior Rulings.

Ms. DeVos's memorandum in support of her Motion to Quash makes clear that the interpretation and application of the California court's discovery order will be key to adjudicating her motion. Indeed, the Motion to Quash spends four pages summarizing the discovery order and the means by which the *Sweet* Plaintiffs have sought Ms. DeVos's testimony. *See* Motion to Quash at 7-10; *see also id.* at 17-25 (detailing conduct of discovery in *Sweet* case, including disputes between the parties regarding the proper scope of discovery). Integrated throughout the Motion are citations to the discovery order that contradict its plain meaning. *See, e.g.*, Motion to Quash at 24 (claiming that Judge Alsup "did not authorize the unbounded inquiry into the supposed 'real' reasons for the delay"); *id.* at 22 (claiming that the discovery sought by Plaintiffs in accordance

13

with the discovery order is "not essential—and indeed, irrelevant—to the merits of this APA case").

Moreover, considering the merits of Ms. DeVos's Motion to Quash will require a court to interpret not just one, but *two* of the issuing court's orders: the October 23, 2020 Order regarding the scope of expedited discovery (Ex. 1), and the January 12, 2021 order responding to Plaintiffs' letter brief detailing the necessity of Ms. DeVos's testimony (Ex. 3). As to the first, Judge Alsup set the parameters for the supplemental discovery of which the DeVos deposition is a crucial part. As to the second, the issuing court would be in the best position to explain what that streamlined order meant in relation to the arguments Plaintiffs put forward in their letter brief. In these circumstances, the issuing court "would be in the best position to interpret and rule on the effect of" the issuing court's own orders. *In re Managed Care Litig.*, 2020 WL 6044557, at *5.

### D.  Transfer Does Not Impose Any Burden on Ms. DeVos or Her Counsel.

Litigating the Motion to Quash in the Northern District of California will not impose any burden on Ms. DeVos or her counsel, particularly in light of how federal courts are currently operating to address the COVID-19 pandemic.

*First*, all of the depositions in the *Sweet* litigation thus far have been conducted remotely, and the parties have already agreed (and Ms. DeVos's subpoena provides) that Ms. DeVos will be deposed remotely as well.[4] *See* ECF No. 1-1. This is now standard practice, of course. Because of COVID-19, both the Southern District of Florida and the Northern District of California have issued administrative orders recommending that hearings be conducted via remote technology. *See*

---

[4] Notably, when the *Sweet* Plaintiffs noticed the deposition of another former Department official—former Acting Under Secretary James Manning—government counsel agreed to accept service of a subpoena noticing a remote deposition of Mr. Manning without raising any issue regarding the "place of compliance."

In re: Coronavirus Public Emergency, Sixth Order Concerning Jury Trials and Other Proceedings, Administrative Order 2020-53, ¶ 12 (S.D. Fla., filed Aug. 11, 2020), *available at* https://web.flsd.uscourts.gov/uploads/adminOrders/2020/2020-53.pdf ("strongly encouraging" judges "to conduct court proceedings by telephone or video conferencing where practicable"); General Order No. 72-6: In re: Coronavirus Disease Public Health Emergency, at 1 (N.D. Cal. Sept. 16, 2020), *available at* https://www.cand.uscourts.gov/wp-content/uploads/general-orders/GO_72-6_In_Re_COVID_Public_Health_Emergency_9-16-2020.pdf (all civil hearings "will be held via telephone or video conference").

Numerous courts have found that, because of the remote proceedings necessitated by COVID-19, "there is no practical difference between appearing before" one court or another for purposes of Rule 45(f). *Bright House Networks, LLC v. MarkMonitor, Inc.*, No. 20-MC-80083-TSH, 2020 WL 4464882, at *3 (N.D. Cal. Aug. 3, 2020).[5] Accordingly, any burden on Ms. DeVos or her counsel from transferring the Motion to Quash to the Northern District of California is greatly minimized because of these efforts. *See* Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment ("[J]udges are encouraged to permit telecommunications methods to minimize the burden a transfer imposes on nonparties . . . .").

*Second*, even though the agreed-upon Zoom deposition is the relevant event as to Ms. DeVos's burden, it is worth emphasizing that Ms. DeVos herself was, of course, the Defendant in this litigation up until her abrupt resignation last month. As such, she has certainly "participated in the underlying litigation" in California such that the burden of transfer to her is "minimal." *See*

---

[5] *See also, e.g.*, *U.S. Plywood*, 2021 WL 409968, at *4; *In re Managed Care Litig.*, 2020 WL 6044557, at *5; *Hayward Prop., L.L.C. v. Commonwealth Land Title Ins. Co.*, No. 20-50286, 2020 WL 3104288, at *2 (E.D. Mich. June 11, 2020); *Glob. Agility Sols.*, 2020 WL 2494625, at *2; *In re Nonparty Subpoenas to PPG Indus., Inc.*, No. 2:20-MC-00296-RJC, 2020 WL 1445844, at *4 (W.D. Pa. Mar. 25, 2020).

*Exist, Inc. v. Shoreline Wear, Inc.*, No. 15-61917-MC, 2015 WL 13694080, at *3 (S.D. Fla. Oct. 16, 2015); *see also Parks, LLC v. Tyson Foods, Inc.*, No. 15-634, 2015 U.S. Dist. LEXIS 110490, at *5 (W.D. Pa. Aug. 20, 2015) (finding that a nonparty will not be burdened by transferring the motion to the issuing court because "although [nonparty] is not a named party . . . it is by no means a stranger to matter").

*Third*, Ms. DeVos's private and government counsel are both easily able to litigate in the Northern District of California, at no additional cost to themselves or Ms. DeVos. Government counsel has, of course, been litigating the *Sweet* case there since June 2019. *See, e.g.*, *Roy*, 2018 WL 1894731, at *5 (finding "comparatively minor" interest in local resolution for the subpoenaed party where he had previously represented the defendant before the issuing court); *CFA Inst.*, 2020 WL 1695050, at *2 (transfer would "impose an insignificant burden on" individuals who were "represented by the same Washington, D.C. law firm that has been representing the Defendants in the underlying case"); *cf. United States v. 3M Co.*, No. CIV120MC00320LGRPM, 2020 WL 6587052, at *3 (S.D. Miss. Nov. 10, 2020) (noting that, where the subpoenaed individual was "being represented by the U.S., presumably at no expense of his own," transfer would not impose "any potential undue costs to him" (citing *Judicial Watch*, 307 F.R.D. at 34–35)).

Ms. DeVos's private counsel belongs to a large national law firm that maintains an office in San Francisco,[6] and he himself has appeared before the Ninth Circuit previously. Further, Rule 45(f) specifically provides that Ms. DeVos's private counsel "may file papers and appear on the motion as an officer of the issuing court," thus obviating any need to obtain local counsel in California. *See Collins v. Benton*, No. 219CV01970JADDJA, 2019 WL 5963709, at *2 (D. Nev. Nov. 12, 2019) (citing Fed. R. Civ. P. 45(f)). On the other hand, Plaintiffs' counsel need to be

---

[6] *See* https://www.bsfllp.com/locations/san-francisco.html.

admitted *pro hac vice* into the Southern District of Florida, which is an additional burden on them that would not be imposed on Defendants' counsel in the event of transfer.

## V.      CONCLUSION

For the foregoing reasons, the *Sweet* Plaintiffs respectfully request that this Court transfer Ms. DeVos's Motion to Quash to Judge Alsup's docket in the Northern District of California.

If the Court does not grant expedited treatment of this motion, the *Sweet* Plaintiffs respectfully request that the due date for their opposition to the Motion to Quash (currently set for February 22, 2021) be continued until seven days after the Court rules on Plaintiffs' Motion to Transfer.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(B), I certify that counsel for the Movants have conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised by the attached motion and have been unable to do so.

Dated: February 11, 2021                                          Respectfully submitted,

                                                                  */s/ Manuel J. Dominguez*
                                                                  Margaret E. O'Grady *(pro hac vice pending)*
                                                                  Email: mogrady@law.harvard.edu
                                                                  Rebecca C. Ellis *(pro hac vice pending)*
                                                                  Email: rellis@law.harvard.edu
                                                                  LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL
                                                                  122 Boylston Street
                                                                  Jamaica Plain, MA 02130
                                                                  Tel.: (617) 390-3003
                                                                  Fax: (617) 522-0715

Manuel J. Dominguez
FL Bar No.: 0054798
Email: jdominguez@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
11780 U.S. Highway One | Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401

*Attorneys for Movants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 11, 2021, the foregoing Expedited Motion to Transfer Elisabeth DeVos's Motion to Quash to the Northern District of California, brief in support, and exhibits were served on all parties to this action using the CM/ECF electronic filing system.

    /s/ *Manuel J. Dominguez*
Manuel J. Dominguez