UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Pierce Division

Case No. 2:21mc14073-MARTINEZ-MAYNARD

Case Pending in the U.S. District Court for the Northern District of California:
*Sweet, et al. v. Zais [Rosenfeldt], et al.*, 3:19-cv-03674-WHA (N.D. Cal.)

IN RE SUBPOENA SERVED ON
ELISABETH DEVOS

---

**REPLY IN SUPPORT OF THE *SWEET* PLAINTIFFS' MOTION TO TRANSFER THE
MOTION TO QUASH THE RULE 45 SUBPOENA OF ELISABETH DEVOS**

Manuel J. Dominguez
FL Bar No.: 0054798
Email: jdominguez@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
11780 U.S. Highway One | Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401

Margaret E. O'Grady (*pro hac vice*)
Email: mogrady@law.harvard.edu
Rebecca C. Ellis (*pro hac vice*)
Email: rellis@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

**I.     INTRODUCTION**

Movants, the *Sweet* Plaintiffs,[1] are in the unusual position of having to respond to two different Oppositions to their Motion to Transfer. The Department of Justice, counsel for Ms. DeVos in her capacity as former Secretary of Education, filed an Opposition on February 19, 2021 (ECF No. 18) ("ED Opp."), and Ms. DeVos's private counsel filed an Opposition on February 22, 2021 (ECF No. 19) ("Boies Opp."). The two sets of counsel filed the Motion to Quash together, but now have filed two different Opposition briefs regarding transfer, resulting in Ms. DeVos gaining an extra twenty pages of opposition briefing. In any case, the *Sweet* Plaintiffs respond in this Reply to the arguments made by both sets of counsel (referred to herein collectively as "Ms. DeVos"), which amount to essentially the same empty claims about supposed harassment and burden, while ignoring that the Northern District of California has already weighed in on the issue of Ms. DeVos's deposition, and, given the complexity of the underlying case and the discovery disputes at issue, is clearly the proper venue for deciding the Motion to Quash.

Ms. DeVos was the named defendant in the *Sweet* litigation from the time the Complaint was filed in June 2018 until her resignation on January 7, 2021. In October 2020, the California court openly contemplated the potential deposition of then-Secretary DeVos. *See* Discovery Order at 16, *Sweet* Matter, ECF No. 146 (Mot. Transfer Ex. 1). The *Sweet* Plaintiffs took *exactly* the steps required by the California court: They took depositions and propounded written discovery. They determined that Ms. DeVos had unique knowledge about the facts at the heart of the case. They filed a letter brief requesting her deposition and laying out the extraordinary circumstances justifying it. *See* DeVos Letter, *Sweet* Matter, ECF No. 171 (Mot. Transfer Ex. 2); Discovery Order

---

[1] Citations to documents in the underlying litigation (generally demarcated by capitalization) not otherwise defined herein have the same meaning as in the *Sweet* Plaintiffs' Motion to Transfer, ECF No. 12, and are attached as exhibits thereto.

at 16. But instead of consenting to transfer the Motion to Quash, which would be the most logical course of action, Ms. DeVos is insisting on litigating this issue in this District, where she resides only part time. This Court should reject this blatant gamesmanship and transfer the Motion to Quash to the Northern District of California.

II.     **ARGUMENT**

   **A. Exceptional Circumstances Justify Transfer.**

Ms. DeVos's arguments regarding exceptional circumstances are founded on mischaracterizations of the law. To begin, Ms. DeVos overstates the rarity of transfer under Rule 45(f). *See* ED Opp. at 7; Boies Opp. at 7 (focusing on dictionary definition of "exceptional"). When the issues raised by a third-party subpoena are inextricably intertwined with ongoing litigation in the underlying case, many courts have transferred motions to quash. For example, in *Exist, Inc. v. Shoreline Wear, Inc.*, No. 15-61917-MC, 2015 WL 13694080 (S.D. Fla. Oct. 16, 2015), a court in this district transferred a motion to quash based on the complexity and relatedness of the discovery issues pending in the issuing court:

> If this Court was presiding over the underlying case, the undersigned would consider both motions to quash along with Shoreline's motion to compel at the same time, because together the motions supply the information necessary to make an appropriate ruling. Accordingly, the undersigned finds that exceptional circumstances exist which permit transfer pursuant to Rule 45.

*Id.* at *2-3; *see also id.* at *3 ("Citing the real potential for disruption in the underlying litigation caused by potentially conflicting rulings, a number of courts have found exceptional circumstances in similar situations." (collecting cases)); *see also US Plywood Integrity Coal. v. PFS Corp.*, No. 20-5042 BHS, 2021 WL 409968, at *3 (W.D. Wash. Feb. 5, 2021) (explaining that a court should consider "factors" amounting to "exceptional circumstances" "in total" and finding that transfer was appropriate because of the "complex" relationship of the nonparty to the litigation); *Global Agility Solutions, Inc. v. Barker* No. 1:19-CV-987-TWP, 2020 WL 2494625, at *2 (W.D. Tex.

May 14, 2020) (holding transfer was appropriate for several reasons, including that "[t]he Indiana court has already issued several orders addressing discovery disputes" whereas "[t]his Court . . . has no familiarity with the details of the case, the scope of discovery, or the special protection that may be required for certain evidence," and that "[a]ny ruling this Court might issue could easily disrupt the Indiana court's management of the underlying litigation, both procedurally and substantively"); *Fed. Home Loan Mortgage Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 43-44 (D.D.C. 2015) ("exceptional circumstances" warranting transfer include the interest of "avoiding disrupting . . . the management of the underlying action").

Just because other motions to transfer have been denied does not mean that the instant one should be. Ms. DeVos relies heavily on *Federal Deposit Insurance Corp. v. Galan-Alvarez*, No. 1:15-MC-00752 (CRC), 2015 WL 5602342 (D.D.C. Sept. 4, 2015) as support for her contention that transfer is inappropriate in this case. *See* ED Opp. at 11-12; Boies Opp. at 12-13. Though Ms. DeVos characterizes *Galan-Alvarez* as "indistinguishable" from the instant case (Boies Opp. at 13), it is distinguishable on a number of grounds. First, in *Galan-Alvarez*, the FDIC opposed the motion to transfer in part because it had requested judicial supervision of the depositions in Washington D.C. and was concerned this would be infeasible if the motion to transfer were granted. *Galan-Alvarez*, 2015 WL 5602342, at *2. Second, in ruling against the motion to transfer, the Washington D.C. judge relied on the fact that he had "conferred with the presiding judge in Puerto Rico, who concurs that this Court's handling of this motion would not interfere with his management of the case." *Id.* Third, the court in *Galan-Alvarez* based its decision on the fact that the issuing court "ha[d] not ruled on the issues presented in the motion." *Id.* By contrast, as Plaintiffs have pointed out, the Motion to Quash is intertwined with issues in the *Sweet* litigation that are ongoing in the California court. *See* Motion to Transfer at 9-14; *see CMB Expert, LLC v.*

3

*Atteberry*, No. 3:14-MC-51-B-BN, 2014 WL 2197840, at *1–2 (N.D. Tex. May 27, 2014) (cited in ED Opp. at 11; Boies Opp. at 13) (declining to transfer one of many non-party subpoenas from Dallas to Illinois in part because "other, ***at most tangentially related motions*** are pending before the court in the Central District of Illinois" (emphasis added)).

Rule 45(f) determinations are inherently fact-specific, as shown by the myriad cases where courts make determinations based on the posture of the underlying litigation and the particular characteristics of the non-party. *See, e.g.*, *CFA Inst. v. Am. Soc'y of Pension Prof'ls & Actuaries*, No. 1:20-MC-00018 (TNM), 2020 WL 1695050, at *2 (D.D.C. Apr. 7, 2020) ("exceptional circumstances" warranting transfer include that the "issuing court is versed in the nuances of . . . the underlying action" (internal quotation omitted), and finding that transfer would "impose an insignificant burden on [respondents], who are represented by the same Washington, D.C. law firm that has been representing the Defendants in the underlying litigation"). Ms. DeVos's stated concern about setting a supposedly dangerous precedent (*see* ED Opp. at 13; Boies Opp. at 16) is thus well overblown. The Motion to Transfer here concerns one situation only: that of Ms. DeVos. And in this situation, the case for exceptional circumstances justifying transfer is clear.

The DeVos deposition is deeply intertwined with ongoing discovery practice in the California court. Indeed, as Plaintiffs have explained, Ms. DeVos's knowledge goes to questions at the very heart of the *Sweet* case. *See* Motion to Transfer at 5-7. Ms. DeVos claims, inexplicably, that "the private party here has nothing to do with any of [the California] discovery, and the Motion to Quash has nothing to do with her deposition." Boies Opp. at 13. Assuming, charitably, that counsel intended to argue that the California motion to *compel* has nothing to do with Ms. DeVos, that argument still could not be more wrong. Through both their motion to compel and their subpoena to Ms. DeVos, the *Sweet* Plaintiffs seek information — withheld from them so far —

4

about why the Department of Education halted the borrower defense process. Not only had Judge Alsup previously signaled that the deposition of the (now-former) Secretary may be necessary, but *just yesterday*, over the Defendants' objections, he ruled that Ms. DeVos's relevant communications must be produced. This ruling both demonstrates the California court's close involvement in the specifics of the information the *Sweet* Plaintiffs seek from Ms. DeVos, and deepens concerns about the possibility of inconsistent rulings and interference with the underlying litigation, because the emails of Ms. DeVos may further sharpen the necessity of obtaining her testimony by deposition. *See* Motion to Transfer at 12 (citing *CFA Inst.*, 2020 WL 1695050, at *2). Judge Alsup has ordered an initial email search, and directed further briefing and potentially additional discovery following that briefing. If the Motion to Quash is not transferred, a ruling by this court could pretermit discovery that Judge Alsup may otherwise order. Conversely, this court could order discovery that Judge Alsup would otherwise determine is not necessary.

Contrary to Ms. DeVos's suggestions otherwise, the *Sweet* Plaintiffs nowhere contend that Judge Alsup has *already* ruled on the applicability of the apex doctrine to Ms. DeVos. *See* ED Opp. at 8; Boies Opp. at 8. But it is clear that Judge Alsup signaled at least a preliminary view regarding whether or not "extraordinary circumstances" are necessary to order the deposition of a *former* official. *Compare* Discovery Order at 16 ("Extraordinary circumstances, however — for example, if the Secretary has unique first-hand knowledge or necessary information cannot be obtained through other, less intrusive means — may justify such a deposition at a later date") *with* DeVos Order, *Sweet* Matter, ECF No. 172 (Mot. Transfer Ex. 3) ("The Court appreciates class counsel's request to depose Elisabeth DeVos, but the prior order restricted deposition of 'the Secretary' . . . It imposed no such restriction regarding Citizen DeVos."). The California court should have the opportunity to rule on intertwined and ongoing discovery controversies.

5

### B. The "Burden" of the Deposition Itself Is a Subject for the Motion to Quash, Not the Motion to Transfer.

Ms. DeVos appears to believe that the *Sweet* Plaintiffs are moving to transfer the place of compliance of the deposition to California. They are not, and have never suggested so. Rule 45(f) is concerned only with the burden of arguing the Motion to Quash in another jurisdiction. Because Ms. DeVos's arguments about the burden of her deposition are unfounded and irrelevant, they should be given no weight.

Ms. DeVos argues that "[t]he Sweet Plaintiffs seek to append a 'Zoom exception' to Rule 45(f), arguing that because the proposed deposition can be conducted remotely, the burden of transfer on former Secretary DeVos dissipates." Boies Opp. at 18. This is nonsensical. Plaintiffs' argument that COVID-mandated remote hearings would obviate one potential burden of transfer was not about the deposition itself, but about Ms. DeVos's counsel's ability to appear for the *Motion to Quash hearing* via Zoom (or similar means). *See* Motion to Transfer at 16 ("Ms. DeVos's private and government counsel are both easily able to litigate in the Northern District of California, at no additional cost to themselves or Ms. DeVos."); *see also id.* at 16-17 (collecting cases where courts found a counsel's ability to argue remotely resulted in an insignificant burden).[2] Ms. DeVos spends a surprising amount of her Oppositions arguing about the burden of harassment in depositions, and the burden of appearing for a deposition over Zoom, all of which are arguments germane to the Motion to Quash, *not* the Motion to Transfer. *See, e.g.*, Boies Opp. at 16 ("Remote

---

[2] The Motion to Transfer mentions the "burden" of the deposition itself once, in order to *distinguish* it from the burden actually at issue in the Motion to Transfer. *See* Motion to Transfer at 15-16 ("Second, **even though** the agreed-upon Zoom deposition is the relevant event as to Ms. DeVos's burden, it is worth emphasizing that Ms. DeVos herself was, of course, the Defendant in this litigation up until her abrupt resignation last month"; quoting *Parks, LLC v. Tyson Foods, Inc.*, No. 15-634, 2015 U.S. Dist. LEXIS 110490, at *5 (W.D. Pa. Aug. 20, 2015) (finding that a nonparty will not be burdened by **transferring the motion to the issuing court** because "although [nonparty] is not a named party . . . it is by no means a stranger to matter." (emphasis added))).

6

depositions will always be available"); *id.* ("This is particularly problematic because, as this Court has recognized, these private parties are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." (citation omitted)). Indeed, a court in the Southern District of Florida has rejected arguments akin to Ms. DeVos's:

> KS's opposition to the motion to transfer focuses on the exceptional circumstances side of the equation, **and although it argues that compliance with the subpoena would be unduly burdensome, it has made no such argument with respect to transfer,** other than to minimize its connection to California. Because KS already has participated in the underlying litigation, and because the Advisory Committee notes to Rule 45 encourage the court to permit telephonic participation after transfer to minimize travel costs to non-parties in these situations, **the Court finds that any additional burden on KS associated with pursuing its motion in California will be minimal**.

*Exist, Inc.*, 2015 WL 13694080, at *3 (emphasis added). The *Sweet* Plaintiffs do not contend that the subpoena's place of compliance should have been the Northern District of California, but rather that under Rule 45(f), that court is best suited to rule on the *Motion to Quash*. Ms. DeVos's arguments regarding the circumstances of her deposition are thus beside the point.[3]

### C. Ms. DeVos's Opposition Includes False Statements About Place of Compliance and the Service of the Subpoena.

Ms. DeVos conditioned her acceptance of service of the subpoena on the Vero Beach place of compliance. *See* Motion to Transfer Ex. 4 at 1. The *Sweet* Plaintiffs do not dispute that if Ms. DeVos does indeed reside in Vero Beach, Florida, the subpoena's place of compliance is properly listed as such. But the *Sweet* Plaintiffs will not accept Ms. DeVos's blatant rewriting of history about the condition she herself imposed without correcting the record.

After the California court's order stated that because Ms. DeVos was a "[c]itizen" and no longer the Secretary, the proper course of action was to subpoena her (DeVos Order), Plaintiffs

---

[3] Ms. DeVos's argument that the time difference between California and Florida poses an untenable burden (*see* Boies Opp. at 18) requires no response. Nor does it personally burden Ms. DeVos if her counsel may have to supplement their briefing with case law from another circuit. *Id.* at 17.

asked counsel if they would accept service of the subpoena. *See* Motion to Transfer Ex. 4 at 3. The Department of Justice, speaking on behalf of Ms. DeVos's private counsel (who were unidentified at the time), said they would, *on the condition that the place of compliance would be listed as Vero Beach, Florida*. *See id.* at 1. Now, Ms. DeVos acts as if noticing the deposition in Vero Beach, Florida, was somehow Plaintiffs' idea: "[I]t is the *Sweet* Plaintiffs who chose where to notice the subpoena . . .. The *Sweet* Plaintiffs had two choices as to where to compel compliance: Secretary DeVos's Western District of Michigan residence or Secretary DeVos's Southern District of Florida residence." Boies Opp. at 11-12. This is the first that Plaintiffs have heard of either Ms. DeVos's residence in Michigan, or that she resides in Vero Beach only "part time." ED Opp. at 4.

Ms. DeVos also accuses Plaintiffs of "improperly [seeking] to depose a nonparty without a subpoena." Boies Opp. at 11. This, too, is wholly unfounded. Plaintiffs, of course, were always going to serve a subpoena on Ms. DeVos — just as they offered to subpoena another non-party deponent, former Under Secretary James Manning. Notably, the Department of Justice agreed to accept notice of Mr. Manning's deposition, and spontaneously waived a subpoena, without any discussion regarding place of compliance. *See* Email from R. Merritt to M. O'Grady et al., dated Nov. 30, 2020, appended hereto as Exhibit A. The letter brief the *Sweet* Plaintiffs submitted to Judge Alsup seeking to depose Ms. DeVos was out of an abundance of caution, because he had ordered that if the *Sweet* Plaintiffs sought the deposition of the "Secretary" — at the time meaning Ms. DeVos — they had to petition the court to allow it. *See* Discovery Order at 16. Ms. DeVos cannot fault the *Sweet* Plaintiffs for taking the steps that were outlined by the California court.

### D. The Burden of Transfer on Ms. DeVos Is Negligible.

Ms. DeVos likewise fails to advance any compelling argument regarding the supposed burden of transferring her Motion to Quash to Judge Alsup's court. Here, Ms. DeVos's attempt to draw a bright line between her "personal" and "official" capacities in order to distance herself from

the underlying *Sweet* litigation is pure sophistry. *See* ED Opp. at 14-15; Boies Opp. at 9, 11, 19-20. Indeed, in her Motion to Quash, Ms. DeVos *emphasizes* the relevance of her role as a former government official, whereas here she forcefully disclaims it. *Compare* Motion to Quash at 12 (arguing that "[t]he concerns of the apex doctrine all apply to Plaintiffs' attempt to depose former Secretary DeVos, who held one of the highest-ranking federal offices as a member of the Cabinet"), *with* Boies Opp. at 1 ("Betsy DeVos is a private citizen."), *id.* at 9 ("The subpoena target here is a private party . . . ."), *id.* at 20 (same).

In the course of Ms. DeVos's nearly four-year tenure as Secretary of Education, she acquired *personal* knowledge of the issues in dispute in the *Sweet* case. That personal knowledge did not magically disappear on the day that she resigned her position. The distinction between an individual's personal and official capacity matters for purposes of their personal liability for agency conduct—but Plaintiffs, of course, do not seek to hold Ms. DeVos liable for anything here. They simply seek to learn what she knows about matters crucial to the *Sweet* litigation.

Nor can Ms. DeVos be surprised to be asked about this litigation. She has been on notice that she was a potential deponent in the *Sweet* matter since October 2020. *See* Discovery Order at 16. Plaintiffs notified government counsel about their intent to depose Ms. DeVos before she resigned. *See* Motion to Transfer at 6. It strains credulity to suggest that Ms. DeVos, as Secretary, was unaware of major litigation involving her Borrower Defense Unit, in which she was a named defendant for 18 months. In short, Plaintiffs' subpoena is not some kind of ambush. The argument that Ms. DeVos has no personal connection whatsoever to the *Sweet* litigation is meritless.

*Second*, Ms. DeVos argues strenuously that if her Motion to Quash is transferred, it will fling the doors open to Cabinet officials being subjected to repetitive, abusive, harassing subpoenas in far-flung locales. *See* ED Opp. at 13; Boies Opp. at 2, 15-16. To begin, as noted above, this

9

argument is properly advanced in Ms. DeVos's Motion to Quash, not her opposition to Plaintiffs' Motion to Transfer, because it concerns *whether Ms. DeVos may be deposed at all*, not the venue for hearing the Motion to Quash. *See supra* II(C).[4] Even on its merits, however, this argument fails. As explained, Rule 45(f) transfer decisions are inherently fact-specific, and other district courts would still be free to consider salient differences in different situations,[5] if actual evidence of harassment or abuse were present. *See supra* II(A). Here, by contrast, Ms. DeVos cannot credibly argue that this imagined scenario of harassment-by-process describes her personal circumstances. There is no support for Ms. DeVos's insinuations that Plaintiffs' procedurally appropriate, anticipated subpoena is abusive or harassing (*see, e.g.*, Boies Opp. at 1-3, 20), especially considering that Judge Alsup has now ordered that her communications be searched to find specific documents related to the order to cease processing borrower defense applications. Plaintiffs have addressed these *ad hominem* attacks already. *See* Motion to Quash Opp. at 31-32; Motion to Transfer at 12-13. Ms. DeVos is not currently subject to any other deposition subpoena, as far as Plaintiffs are aware. The question is simply whether, under circumstances as they exist now, the Motion to Quash should be heard by Judge Alsup in the Northern District of California. For the reasons stated herein, Plaintiffs request that this Court find that it should.

### III. CONCLUSION

For the foregoing reasons, the *Sweet* Plaintiffs respectfully request that this Court GRANT their Motion to Transfer Ms. DeVos's Motion to Quash the Rule 45 Deposition Subpoena.

---

[4] To the extent the Department of Justice argues that "a former Cabinet official could be required to travel 3,000 miles to assert the applicability of the Apex Doctrine," ED Opp. at 13, they provide no explanation for why counsel could not so argue without a former official's personal presence.
[5] The same can be said of Ms. DeVos's arguments regarding remote technology in non-COVID scenarios. *See* ED Opp. at 13-14. Deciding Plaintiffs' Motion does not require this Court to predict what some other court may do in some other situation *unlike* this one.

Dated: February 25, 2021                               Respectfully submitted,


*/s/ Manuel J. Dominguez*
Margaret E. O'Grady *(pro hac vice)*
Email: mogrady@law.harvard.edu
Rebecca C. Ellis *(pro hac vice)*
Email: rellis@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Manuel J. Dominguez
FL Bar No.: 0054798
Email:  jdominguez@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL
PLLC
11780 U.S. Highway One  | Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401

*Attorneys for Movants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 25, 2021, the foregoing Reply in Support of Motion to Transfer was served on all parties to this action using the CM/ECF electronic filing system.

*/s/ Manuel J. Dominguez*

Manuel J. Dominguez