**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Pierce Division**


Case No.: 2:21-mc-14073-MARTINEZ/MAYNARD


Case Pending in the U.S. District Court for the Northern District of California:
*Sweet, et al. v. Rosenfelt, et al.*, 3:19-cv-03674-ALSUP (N.D. Cal.)

---

IN RE SUBPOENA SERVED ON
ELISABETH DEVOS

---


**ELISABETH DEVOS'S REPLY IN SUPPORT OF**
**THE MOTION TO QUASH**

Jesse Panuccio
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd.
Ste. 1200
Fort Lauderdale, FL  33301
Telephone: (954) 356-0011
Email:  jpanuccio@bsfllp.com

## I.   ADDITIONAL BACKGROUND.

In response to the Motion to Quash, the *Sweet* Plaintiffs filed an Expedited Motion to Transfer, claiming that expedition was "necessary" because of the March 11 due date for summary judgment briefing.  Doc. 12 at 2.  As a result, Secretary DeVos's time to respond to the motion was truncated, Docs. 13, 17, further increasing the burden on her as a nonparty.  *See* Fed. R. Civ. P. 45(d)(1).  The *Sweet* Plaintiffs filed a reply in support of their Expedited Motion to Transfer on February 25, 2021.  Doc. 24.  What the *Sweet* Plaintiffs failed to tell this Court, however, is that on February 24, they convinced the California court to extend discovery at least through the end of April, and perhaps for a "subsequent time period" after that.  Ex. 1 (Tr. of Hr'g) at 31.

## II.   *MORGAN* REQUIRES QUASHAL OF THE SUBPOENA.

Not a single word of the Opposition to the Motion to Quash provides a citation, justification, or argument that would permit this Court to depart from *United States v. Morgan*, 313 U.S. 409 (1941).  In *Morgan*, the Supreme Court recounted that the district court had authorized a deposition of the Secretary of Agriculture, during which he was "questioned at length regarding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates."  *Id.* at 422.  The Court held that "the short of the business is that the Secretary should never have been subjected to this examination" because it is "not the function of the court to probe the mental processes of the Secretary."  *Id.*  The Supreme Court reaffirmed this principle just three years ago, when the Solicitor General sought, and the Court granted, an extraordinary stay of a district court's order permitting the deposition of the Secretary of Commerce—a deposition that the plaintiffs claimed they needed for the very same reasons the *Sweet* Plaintiffs claim here (alleged agency pretext).  *See* Renewed Application for a Stay at 29-32, *In re Dep't of Commerce*, 139 S. Ct. 16 (2018) (No.

1

18A375) (citing *Morgan* and arguing that "in a challenge to an agency decision, it is 'not the function of the court to probe the mental processes of the Secretary'"); *In re Dep't of Commerce*, 139 S. Ct. 16, 16-17 (2018) (granting stay of order requiring deposition of Cabinet Secretary);[1] *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019) (even where extra-record discovery is justified in APA challenge, it "did not include the deposition of the Secretary").

The *Sweet* Plaintiffs seek here precisely what *Morgan* forecloses—to "probe the mental processes of the Secretary."  As stated in their initial letter to the California court, the *Sweet* Plaintiffs seek to question Secretary DeVos about "the **real** reasons for the delay" and about her alleged "hostility to the borrower defense program."  Doc. 23-3 at 3, 4.[2]  The *Sweet* Plaintiffs cannot point to a single case in which a court has permitted this kind of inquiry of a **Cabinet Secretary** (current or former) and that is because Supreme Court precedent squarely forecloses it.[3]

---

[1] *See also id.* at 17 (Gorsuch, J., concurring in part and dissenting in part) ("This is all highly unusual, to say the least…. [T]he Court … stays Secretary Ross's deposition after weighing, among other things, the likelihood of review and the injury that could occur without a stay.").

[2] Perhaps sensing that *Morgan* forecloses their gambit, the *Sweet* Plaintiffs now claim that they "are not seeking thoughts and mental processes" but rather "the testimony of Ms. DeVos to understand the explanation for agency inaction."  Doc. 23 at 16.  The *Sweet* Plaintiffs fail to explain the difference between these two concepts, most likely because there is no difference.  If what they want is the "agency" explanation, they can get it via interrogatories or a Rule 30(b)(6) deposition.

[3] In a footnote, the *Sweet* Plaintiffs cite two cases from the Court of Federal Claims, which they claim support their position that a Cabinet secretary can be deposed in a case like this one.  Doc. 23 at 18 n.7.  First, neither case actually resulted in a deposition or trial testimony of a *Cabinet secretary over objection*.  In *Energy Capital Corp. v. United States*, 60 Fed. Cl. 315 (Fed. Cl. 2004), the party seeking the deposition withdrew the relevant motion before any deposition occurred, and thus the order was mooted and not appealed.  *See* Ex. 2.  In *Starr International Co. v. United States*, 121 Fed. Cl. 428 (Fed. Cl. 2015), the former Cabinet secretaries (Paulson and Geithner) did not object to testifying and therefore the court issued no orders on the subject.  Second, cases in the Court of Federal Claims involve monetary claims against the United States, which implicate a very different set of interests than APA cases and the kind of agency decisionmaking at issue in *Morgan*.  *See Energy Cap.*, 60 Fed. Cl. at 316, 317 n.2 (issue was whether, in a breach of contract and Takings case, threats Secretary Cuomo allegedly made to a party by phone *during the litigation* entitled the party to attorney's fees under the EAJA); *Starr Int'l*, 121 Fed. Cl. at 430 (issue was whether the government engaged "a taking without just compensation and an illegal exaction").

**III.**     **EVEN UNDER THE STANDARD FOR SUB-CABINET OFFICIALS, QUASHAL IS REQUIRED.**

Even with respect to the standard for sub-Cabinet officials, the *Sweet* Plaintiffs are unable

to carry their burden.  Eleventh Circuit precedent dictates that a "district court should rarely, if

ever, compel the attendance of a high-ranking official in a judicial proceeding." *In re United States*

*(Jackson)*, 624 F.3d 1368, 1376 (11th Cir. 2010); *see also In re United States (Kessler)*, 985 F.2d

510, 512 (11th Cir. 1993) (requiring "extraordinary circumstances").  The law is the same in every

circuit court of appeals to have addressed the issue.[4]  The *Sweet* Plaintiffs make two arguments as

to why their case is the "rare[], if ever," "extraordinary" exception: (1) the apex doctrine does not

apply to former officials and (2) even if the apex doctrine applies, the *Sweet* Plaintiffs have

demonstrated Secretary DeVos has unique knowledge that is essential to the case.  Both assertions

are demonstrably incorrect.

**A.**     **The Apex Doctrine Applies to Former Officials.**

The *Sweet* Plaintiffs claim that "[c]ourts are divided" on whether the apex doctrine protects

former high-ranking government officials, misleadingly citing only two cases that so apply the

doctrine.  Doc. 23 at 14.[5]  But cases applying the apex doctrine to former officials are legion.  *See*

---

[4] *See, e.g.*, *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Lederman v. N.Y. City Dep't of Parks & Recreation*, 731 F.3d 199, 204 (2d Cir. 2013); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *Warren Bank v. Camp*, 396 F.2d 52, 56-57 (6th Cir. 1968); *Hammer v. Ashcroft*, 570 F.3d 798, 803 (7th Cir. 2009); *In re United States (Holder)*, 197 F.3d 310, 313-14 (8th Cir. 1999); *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231-32 (9th Cir.1979); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *In re United States*, 542 F. App'x 944, 947 (Fed. Cir. 2013).

[5] The *Sweet* Plaintiffs' few citations for "split" authority fall apart upon examination.  For starters, none of the cases involved a former Cabinet Secretary, and thus cannot be read to contravene the Supreme Court's command in *Morgan* that it is "not the function of the court to probe the mental processes of the Secretary."  313 U.S. at 422.  Moreover, the citations do not even support that sub-Cabinet officials lose protections after leaving office. *Sanstrom v. Rosa*, No. 93-7146, 1996 WL 469589, at *1 n.1 (S.D.N.Y. Aug. 16, 1996), involved a former government official who had also been sued in his personal capacity. *Toussie v. County of Suffolk*, No. 05-1814, 2006 WL 1982687, at *2 (E.D.N.Y. July 13, 2006), held that such depositions should not be

*Lederman*, 731 F.3d at 204 (applying doctrine to former deputy mayor); *FDIC v. Galan-Alvarez*, No. 15-00752, 2015 WL 5602342, at \*4 (D.D.C. Sept. 4, 2015) ("The apex doctrine is no less applicable to former officials than to current officials."); *Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014) ("This doctrine applies to both current and former high-ranking officials."); *Sargent v. City of Seattle*, No. 12-1232, 2013 WL 1898213, at \*3 n.2 (W.D. Wash. May 7, 2013) (rejecting argument that apex doctrine does not apply to official who resigned after deposition was sought); *Dobson v. Vail*, No. 10-5233, 2011 WL 4404146, at \*1 (W.D. Wash. Sept. 21, 2011) ("Courts have extended this rule to cover depositions of former high-ranking officials."); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049–50 (E.D. Cal. 2010) ("The general rule prohibiting depositions of high-ranking government officials applies to former high-ranking officials…."); *Bey v. City of New York*, No. 99-3873, 2007 WL 3010023, at \*1 (S.D.N.Y. Oct. 15, 2007) ("it has been applied to requests to depose former high level officials"); *Gil v. Cty. of Suffolk*, No. 06-1683, 2007 WL 2071701, at \*2 (E.D.N.Y. July 13, 2007) ("the depositions of former high ranking government officials should not be lightly granted"); *Croddy v. FBI*, No. 00-0651, 2005 WL 8168910, at \*1 (D.D.C. Mar. 30, 2005) ("the *Morgan* doctrine also applies to former high-ranking government officials"); *United States v. Wal-Mart Stores, Inc.*, No. 01-1521, 2002 WL 562301, at \*4 (D. Md. Mar. 29, 2002) ("doctrine is applicable to efforts by parties to depose former high-ranking officials").[6]

---

"lightly granted" and, generally, only where "the official has been personally involved in the events at issue in the case."  And *Consumer Financial Protection Bureau v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 17-817, 2017 WL 6042221, at \*1 (N.D. Ohio Dec. 6, 2017), reached its conclusion with no analysis and without the benefit of briefing on the topic.

[6] *See also Horne v. Sch. Bd. of Miami-Dade Cty.*, 901 So. 2d 238, 241 (Fla. 1st DCA 2005) ("the rule prescribing that agency heads and other high-ranking officials should not be compelled to testify … is equally applicable to former agency heads and high-ranking officials in circumstances … involving past official conduct"); *Arnold Agency v. W. Va. Lottery Comm'n*, 526 S.E.2d 814, 830 (W. Va. 1999) ("Former high-ranking government administrators, whose past

And in *this Court*, the authority is *uniform* that the apex doctrine applies to former high-ranking government officials. *See Cruz v. Green*, No. 18-60995, 2019 WL 5208913, at *3 (S.D. Fla. Feb. 7, 2019) ("a former high ranking public official … is entitled to heightened protection from deposition even after leaving that office"); *Buckler v. Israel*, No. 13-62074, 2014 WL 7777678, at *1 (S.D. Fla. Nov. 13, 2014) ("This rule has been extended to cover depositions of former high ranking officials."); *City of Fort Lauderdale v. Scott*, No. 10-61122-CIV, 2012 WL 760743, at *2 (S.D. Fla. Mar. 7, 2012) (same). As the Court explained in *City of Fort Lauderdale*, "[f]ormer high-ranking government administrators, whose past official conduct may potentially implicate them in a significant number of related actions, have a legitimate interest in avoiding unnecessary entanglements in civil litigation. That interest survives leaving office," and a contrary rule "would serve as a significant deterrent to qualified candidates for public service." *Id.*[7]

This overwhelming weight of authority exists because the interests underlying the apex doctrine "continue upon the official's departure from public service." *Wal-Mart*, 2002 WL 562301, at *3. First, the apex doctrine protects against violations of the separation of powers. *See In re United States (Jackson)*, 624 F.3d at 1372; *Marllantas, Inc. v. Rodriguez*, 806 F. App'x 864, 867 (11th Cir. 2020) ("[J]udicial inquiry into executive motivation represents a substantial

---

official conduct may potentially implicate them in a significant number of related legal actions, have a legitimate interest in avoiding unnecessary entanglements in civil litigation. That interest obviously survives leaving office. Thus, the standard … continues to apply in instances where a party seeks to orally depose a former high-ranking government official….").

[7] Courts even apply the apex doctrine to former corporate officials, to whom none of the constitutional concerns attach. *See, e.g.*, *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 5640727, at *1-2 (S.D. Fla. Aug. 31, 2017); *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, No. 16-0698, 2018 WL 692259, at *6-7 (S.D. Cal. Feb. 2, 2018); *Younes v. 7-Eleven, Inc.*, No. 13-3500, 2015 WL 12844446, at *1-2 (D.N.J. Aug. 19, 2015); *Robertson v. McNeil-PPC Inc.*, No. 11-09050, 2014 WL 12576817, at *15-17 (C.D. Cal. Jan. 13, 2014); *Ford Motor Co. v. Edgewood Props., Inc.*, No. 06-1278, 2011 WL 2517133, at *1, *4 (D.N.J. June 23, 2011); *Gauthier v. Union Pac. R. Co.*, No. 07-12, 2008 WL 2467016, at *1, *4 (E.D. Tex. June 18, 2008); *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 177-79 (Tex. 2000).

intrusion into the workings of another Branch of Government[.]").  As the *Sweet* Plaintiffs admit, they seek to probe Secretary DeVos's alleged motivations during her tenure as Secretary, Doc. 24 at 10 ("personal knowledge did not magically disappear on the day that she resigned her position"), so nothing about her now "former" status alleviates this constitutional concern.

Second, "subjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options, no matter how controversial."  *Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 12 (D.D.C. 1993); *see also Galan-Alvarez*, 2015 WL 5602342, at *4 ("[t]he integrity of administrative proceedings and the underlying decisionmaking process of agency officials are [*sic*] just as important where the official to be questioned no longer serves in the same position").  Arguing that this interest dissipates after an official resigns is like arguing an attorney may reveal privileged communications after the attorney withdraws from the representation, or that the Executive Branch's deliberative process privilege disappears with a resignation.  *See Am. Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir. 1971) (recognizing the attorney-client privilege "outlasts the lawyer's employment"); *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464-65 (D.C. Cir. 2014) (holding the deliberative process privilege does not "evaporate[] over time").

Third, "[s]ubjecting former officials decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a significant deterrent to qualified candidates for public service….  If the immunity *Morgan* affords is to have any meaning, the protections must continue upon the official's departure from public service."  *Wal-Mart Stores, Inc.*, 2002 WL 562301, at *3.  The *Sweet* Plaintiffs breeze past this concern, Doc. 23 at 15-16, but during a Cabinet secretary's tenure, his or her department will necessarily be involved in many lawsuits.  Indeed, a review of PACER shows that during Secretary

6

DeVos's tenure, the Department of Education was sued nearly 200 times, with Secretary DeVos being named as an official-capacity defendant in at least 47 cases, and with at least 48 cases still pending. It would be cold comfort for Cabinet officials facing such an onslaught of litigation to know that, the moment they leave office, it is open season for discovery abuse. *See Wal-Mart Stores*, 2002 WL 562301, at *3 (if apex doctrine did not apply to former officials, "such public servants should very well expect a mailbag full of deposition subpoenas on the day they depart").

**B.     The *Sweet* Plaintiffs Fail to Establish Extraordinary Circumstances.**

Cases permitting depositions of high-level government officials are exceedingly "rare[]," *In re United States (Jackson)*, 624 F.3d at 1376,[8] and parties seeking such a deposition must "demonstrate … 'extraordinary circumstances,'" *In re United States (Kessler)*, 985 F.2d at 512. It is not enough to show that a high-ranking official might have relevant information; the subpoenaing party must show the official possesses information that is "essential" and "not obtainable from another source." *In re United States (Holder)*, 197 F.3d 310, 314 (8th Cir. 1999). Ipse dixit is not enough, and therefore the *Sweet* Plaintiffs do not even come close.

The *Sweet* Plaintiffs claim in this Court that *only* Secretary DeVos has "the answer to what was 'really going on'" with borrower-defense decisions. Doc. 23 at 19; *see also id.* at 17 ("Ms.

---

[8] *See, e.g.*, *In re McCarthy*, 636 F. App'x 142, 145 (4th Cir. 2015) (disallowing deposition of EPA Administrator); *In re United States (Holder)*, 197 F.3d at 316 (disallowing deposition of Attorney General and Deputy Attorney General); *A.R. v. Dudek*, No. 12-60460-CIV, 2016 WL 3753706, at *2 (S.D. Fla. Apr. 8, 2016) (disallowing deposition of Secretary of the Florida Agency for Health Care Administration); *Spadaro v. City of Miramar*, No. 11-61607-CIV, 2012 WL 3614202, at *4 (S.D. Fla. Aug. 21, 2012) (disallowing deposition of chief of police and assistant chief of police); *Hernandez v. Tex. Dep't of Aging & Disability Servs.*, No. 11-856, 2011 WL 6300852, at *4 (W.D. Tex. Dec. 16, 2011) (disallowing deposition of Texas governor); *RI, Inc. v. Gardner*, No. 10-1795, 2011 WL 4974834, at *3 (E.D.N.Y. Aug. 11, 2011) (disallowing deposition of Solicitor of Labor); *Murray v. U.S. Dep't of Treasury*, No. 08-15147, 2010 WL 1980850, at *6 (E.D. Mich. May 18, 2010) (disallowing deposition of Treasury Secretary); *see also supra* at 4-5 (citing cases disallowing depositions of former officials).

DeVos has unique knowledge"); *id.* at 29 (claiming only Secretary DeVos "has knowledge of the facts Plaintiffs seek"). Yet just two days later the *Sweet* Plaintiffs told a very different story to the California court: "the reason why we are ***seeking documents*** is because discovery so far hasn't been able to clearly answer one of the main questions at the center of this case which is how and why it came to be that the Department of Education stopped issuing Borrower Defense decisions." Ex. 1 at 3:16-20; *see also id.* at 4:11-13 ("all of this, Your Honor, goes directly to the question of pretext which … is a key concern"). In other words, the *Sweet* Plaintiffs told the California court that another discovery source has the information at issue, while telling this Court the opposite.

In addition to failing to disclose the alternative of document discovery, the *Sweet* Plaintiffs have no real answer as to why they served this subpoena before: (1) exhausting the depositions available to them, including a Rule 30(b)(6) deposition; (2) exhausting the interrogatories available to them; or (3) propounding even a single request for admission. This failure to exhaust (or even seriously pursue) alternative discovery is dispositive. *See Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015) (a party seeking an apex deposition must "establish that ... other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success" (quoting *Hickey v. N. Broward Hosp. Dist.*, No. 14-CV-60542, 2014 WL 7495780, at *2 (S.D. Fla. Dec. 17, 2014)).[9]

─────────────

[9] *See also Dudek*, 2016 WL 3753706, at *2 (disallowing deposition where the propounding party "did not sufficiently establish that [the information sought] is not available through less burdensome means, such as an interrogatory"); *Cruz*, 2019 WL 5208913, at *4 (denying a deposition because the plaintiff "has not yet deposed other officials or officers"); *Scott*, 2012 WL 760743, at *3 ("[Apex] discovery is permitted only where it is shown that other persons cannot provide the necessary information." (quoting *Bogan*, 489 F.3d at 423)), *4 (denying deposition because "Plaintiffs never attempted to obtain the information sought through a Rule 30(b)(6) deposition of the City's representative" and "never served on the City any interrogatories or requests for production of documents"); *Stelor Prods., Inc. v. Google, Inc.*, No. 05-80387-CIV, 2008 WL 4218107, at *4 (S.D. Fla. Sept. 15, 2008) (an apex "deposition will not be allowed 'where the information is obtainable through interrogatories ... or [the deposition] of a designated

The *Sweet* Plaintiffs try to get around this in two ways.  First, they claim that the meager discovery efforts they engaged in before resorting to this extraordinary subpoena "satisfied" their "basic obligation."  Doc. 23 at 28.  Ignoring the many cases that say exhaustion is an absolute requirement, they cite three cases for the notion that minimal efforts suffice.  *Id.* at 27-28.  But those cases say no such thing and deem exhaustion an important consideration.  In any event, those cases involved a fast food executive, an airline executive, and a district attorney—not an attempt to probe the mental processes of a Cabinet secretary.

Second, the *Sweet* Plaintiffs spend many pages arguing that the few depositions they have taken show Secretary DeVos has unique knowledge.  But of the few citations they offer, not one actually makes the point.  *See* Doc. 23 at 22 (quoting Jones testimony that "there's ***lots of people*** who could have" decisionmaking authority regarding *Calvillo Manriquez* injunction) (emphasis added)[10]; *id.* at 24 (quoting Jones testimony that "I do not know" who made "chilling effect" decision); *id.* (quoting Manning testimony that "I would expect that [Secretary DeVos would] be ***briefed by others***") (emphasis added)[11]; *id.* at 26 (quoting Nevin response to question of whether she knew reasons for denial of additional staffing: "That's above my pay grade.  I don't know.");

---

spokesperson[.]'" (alterations in original) (quoting *United States v. Baine*, 141 F.R.D. 332, 334 (M.D. Ala. 1991)); *Apple Inc. v. Corellium, LLC*, No. 19-81160, 2020 WL 1849404, at *3 (S.D. Fla. Apr. 13, 2020) (same).

[10] The Sweet Plaintiffs misleadingly suggest that "Under Secretary [Jones] said someone more 'senior' than her made the decision" and that this could be "one of only two people."  Doc. 23 at 23.  Here is what Under Secretary Jones actually said: "**A:** … I am not a senior enough official to have decision-making authority.  **Q:** … [S]o who would have decision-making authority to -- if not you?  **A:** I think that's what I'm trying to tell you is that I – I – I – *there's lots of people who could have it*.  I don't know who made all the decisions, but I do know it wasn't me."  Doc. 23-7 at 11 (emphasis added).

[11] The *Sweet* Plaintiffs claim that Manning confirmed the "chilling effect" policy "would have been connected to Ms. DeVos even more directly," but all Manning said was "I expect the Secretary has that authority," not that she exercised it, and not that she is the only one with knowledge of that policy (indeed, he says "others" would have been involved, "including [the] general counsel").  *Id.*

*id.* at 27 (citing *nothing at all* for allegation regarding "Secretary DeVos's apparent directive of speed over substance").  The bottom line is the *Sweet* Plaintiffs have not, and cannot, point to a single piece of discovery that shows Secretary DeVos has unique knowledge about the topics they allege are essential to resolving the single remaining claim in their case.

### C.       The Record Continues to Show Harassment.

As the *Sweet* Plaintiffs' own citations make plain, courts have held that "an apex deposition … creates a tremendous potential for abuse or harassment."  *In re Transpacific*, No. 07-05634, 2014 WL 939287, at *2 (N.D. Cal. Mar. 6, 2014); *see also Cruz*, 2019 WL 5208913, at *3. Accordingly, the *Sweet* Plaintiffs' methods and motives in seeking this deposition are relevant to the Motion to Quash.  And while the *Sweet* Plaintiffs complain about having their methods highlighted, Doc. 23 at 31-32, they have continued to violate Rule 45 by imposing undue burdens on a nonparty.  The most recent example is failing to withdraw their request for expedition, even though the good-faith basis for that request has dissipated.  *See* Ex. 1.

And while complaining that they have been "[i]mproperly [m]align[ed]," Doc. 23 at 31, the *Sweet* Plaintiffs  have  simultaneously continued their negative public-relations campaign, which now includes their counsel offering an interview for, and highlighting on their website, an article that uses an anonymous "source familiar with the litigation" to criticize the Motion to Quash, that claims Secretary DeVos "long ago forfeited the benefit of … norms" that protect Cabinet officials, that criticizes both undersigned counsel and DOJ counsel for defending the apex doctrine, and that even insults this Court as the "notoriously anti-government transparency Southern District of Florida."  *See* Doc. 19-2.

### CONCLUSION

Movant respectfully requests that this Court grant the Motion to Quash.

Dated: March 1, 2021

Respectfully submitted,

s/ *Jesse Panuccio*

Jesse Panuccio
Boies Schiller Flexner LLP
401 E. Las Olas Blvd.
Ste. 1200
Fort Lauderdale, FL  33301
Telephone: (954) 356-0011
Email: jpanuccio@bsfllp.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 1, 2021, the foregoing reply was served on all

parties to this action using the CM/ECF electronic filing system.


<u>s/ *Jesse Panuccio*</u>
Jesse Panuccio