UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-MC-14073-MARTINEZ/MAYNARD

IN RE SUBPOENA SERVED
ON ELISABETH DEVOS
_____/

**ORDER GRANTING PLAINTIFFS' EXPEDITED MOTION TO TRANSFER ELISABETH DEVOS'S MOTION TO QUASH TO THE NORTHERN DISTRICT OF CALIFORNIA (DE 12)**

**THIS CAUSE** comes before this Court upon an Order of Reference, DE 4, and the above Motion. The undersigned has carefully reviewed the Motion, Responses in Opposition, DE 18, 19, and Reply, DE 24, and is otherwise fully advised in the premises. For the reasons stated below, the undersigned finds that exceptional circumstances exist under Federal Rule of Civil Procedure 45(f) to warrant transfer of the pending Motion to Quash Rule 45 Deposition Subpoena, DE 1.[1]

**BACKGROUND**

Former Secretary Elisabeth DeVos and the United States Department of Education ("the DOE") (collectively, "Movants") jointly filed, in the Southern District of Florida, a motion to quash a deposition subpoena issued to Ms. DeVos by the Plaintiffs in the underlying case *Sweet, et al. v. Rosenfelt, et al.*, No. 3:19-cv-03674-WHA.[2] The *Sweet* case is a class action currently pending in the Northern District of California. The Plaintiffs brought the class action under the Administrative Procedures Act, alleging that the Secretary and the DOE unreasonably delayed in

---

[1] The issue of whether to transfer a subpoena-related motion to the court that has jurisdiction over the underlying case is a non-dispositive matter. *Edwards v. Maxwell*, 2016 WL 7413505, at *1 (S.D. Fla. Dec. 22, 2016). *See also Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020).

[2] Although Ms. DeVos and the DOE are the respondents in the motion to transfer, they are the movants in the motion to quash and so are referred to as "Movants" in this Order.

issuing a decision on borrower defense applications.[3] DE 12 at 5. Ms. DeVos was previously a named defendant in that case, having been sued in her official capacity, but she has since resigned from her position as Secretary. The Plaintiffs issued their deposition subpoena following her resignation.[4] DE 1 at 16; DE 1-1 at 2. The subpoena's place of compliance is Vero Beach, Florida where Ms. DeVos currently resides. DE 1-1 at 2; DE 12-4.

Plaintiffs have now moved to have the motion to quash transferred to the Northern District of California, arguing the existence of exceptional circumstances to warrant a transfer. According to Plaintiffs, deciding the motion to quash separately from the underlying case would risk disrupting the *Sweet* litigation in California. DE 12 at 10. Plaintiffs argue that exceptional circumstances exist because the case is a complex class action that has been pending for over a year and a half, the issuing court is more familiar with the case, the arguments raised in the motion to quash are intertwined with issues that have already been presented to the issuing court, and the issuing court has already made related discovery rulings including finding Ms. Devos' emails relevant to the case. *Id*. at 11. Plaintiffs also argue that deciding the motion to quash in this Court would risk inconsistent rulings as District Judge William Alsup—the judge presiding over the *Sweet* litigation—has previously considered arguments about whether Ms. DeVos could be deposed. DE 12 at 11-12. According to Plaintiffs, deciding the motion to quash would require this Court to interpret two of Judge Alsup's prior orders: 1) an order setting the scope of a limited discovery period; and 2) an order advising Plaintiffs they must subpoena Ms. DeVos as a private citizen if they wish to dispose her now that she is no longer the DOE Secretary. *Id*. at 14-15; DE

---

[3] The "borrower defense" allows the Secretary to cancel certain student federal loan debt. *Sweet v. DeVos*, No. C 19-03674 WHA, 2020 WL 4876897, at *1 (N.D. Cal. May 22, 2020).

[4] Ms. DeVos is being represented in her official capacity by the United States Department of Justice, and in her personal capacity by private counsel. DE 18 at 5 fn 1.

2

12-3. Plaintiffs further argue that transferring the motion would not impose any burden on Ms. DeVos or her counsel for two reasons. First, because court proceedings have been remote, Ms. DeVos would not have to travel in order to litigate the motion to quash if the motion were transferred to Judge Alsup. DE 12 at 15. Second, Ms. DeVos' government counsel has been involved in the underlying litigation since June 2019 and her private attorney's law firm has an office in San Francisco, where the *Sweet* case is being litigated. DE 12 at 17.

Ms. DeVos and the DOE both oppose the transfer of their motion to quash, arguing that Plaintiffs have failed to demonstrate the exceptional circumstances required for transfer. DE 18 at 11; DE 19 at 13. The DOE contends that a decision by this Court on the motion to quash will not disrupt the *Sweet* case because the question of whether Ms. DeVos should be deposed is independent of the other discovery issues pending in that litigation. DE 18 at 13. The DOE further argues that this Court is capable of deciding the issues presented in Ms. DeVos' motion to quash. *Id*. at 15. In her Response, Ms. DeVos disputes Plaintiffs' claim that Judge Alsup has already addressed issues raised in her the motion to quash. DE 19 at 13-14. She further argues that Plaintiffs' other arguments for transfer do not constitute exceptional circumstances as contemplated by Fed.R.Civ.P. 45(f). *Id*. at 15. Ms. DeVos also contends that transferring the motion to quash will increase her costs and burden of litigation. *Id*. at 22. Movants argue that the law favors local resolution of motions to quash, a transfer of the motion would burden Ms. DeVos who is not a party to the action, and the remote nature of the proceeding does not change the Rule 45(f) analysis. They say granting the motion to transfer would set a dangerous precedent whereby former Cabinet officials would be forced to defend against subpoenas in whatever district a lawsuit

against their former agency is pending. This would undermine the Apex Doctrine which seeks to protect high-ranking officials from intrusive or burdensome discovery. [5]

## DISCUSSION

Federal Rule of Civil Procedure 45 requires subpoena-related motions to be filed in the court where compliance with the subpoena is required. Fed.R.Civ.P. 4(c), (d)(2)(B)(i), and (d)(3)(A); *The Dispatch Printing Co. v. Zuckerman*, 2016 WL 335753, at *2 (S.D. Fla. Jan. 27, 2016). If the court where compliance is required is not the court that issued the subpoena however, Rule 45(f) allows the compliance court to transfer the motion to the issuing court "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Because Ms. DeVos does not consent to transfer, the undersigned must determine whether exceptional circumstances exist to warrant transfer of the motion to quash to the issuing court.

Although Rule 45(f) does not define what qualifies as "exceptional circumstances," the Advisory Committee Notes provide the following considerations:

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Advisory Committee Notes to Fed. R. Civ. P. 45(f)'s 2013 Amendment.

---

[5] The Apex Doctrine is the principle that "[h]igh-ranking government officials 'should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.'" *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015). It exempts such officials from testifying if they lack unique, personal knowledge about the matters in dispute and the information can be obtained from a different source. *Id.* at *1.

Courts have also found exceptional circumstances warranting transfer "when transferring the matter is in 'the interests of judicial economy and avoiding inconsistent results.'" *Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 46 (D.D.C. 2014) (quoting *F.T.C. v. A+ Fin. Ctr., LLC*, 2013 WL 6388539, at *3 (S.D. Ohio Dec. 6, 2013)). Factors to consider "include the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014). In some cases, the issuing court will be in a better position to rule on a subpoena-related motion because of the court's "familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *Wultz*, 304 F.R.D. at 46.

Here, the relevant factors warrant transfer of the motion to quash to the Northern District of California. To start, the *Sweet* court is in a better position than this Court to address three arguments Movants make in their motion to quash. First, Movants argue that the discovery Plaintiffs seek from Ms. DeVos is both non-essential and irrelevant to Plaintiffs' case. DE 1 at 29-32. Plaintiffs, on the other hand, contend that Ms. DeVos has unique knowledge about issues at the heart of their case. DE 12 at 14. Where a motion to quash raises questions about the relevance of the discovery sought, courts have found this to weigh in favor of transfer since the issuing court has a deeper understanding of the facts and issues in the case. *See e.g. Flynn v. FCA US LLC*, 216 F. Supp. 3d 44, 47 (D.D.C. 2016) ("Because the Judge and the Magistrate Judge involved in the underlying case are knee-deep in the nuances of the underlying litigation, they are in a much better position than this Court to evaluate relevance."); *Patriot Nat. Ins. Grp. v. Oriska Ins. Co.*, 973 F. Supp. 2d 173, 176 (N.D.N.Y. 2013) ("[T[he relevance argument advanced emphasizes the need for the court where the underlying matter lies to decide the matter."). Determining whether Ms.

5

DeVos has information relevant to the underlying litigation is a question better suited for Judge Alsup, who is significantly more familiar with the issues in dispute. This question of relevance is one key difference between this case and *Federal Deposit Insurance Corporation v. Galan-Alvarez* on which Movants rely. *Galan-Alvarez*, 2015 WL 5602342.  In *Galan-Alvarez*, a negligence action, the plaintiff moved to quash subpoenas issued to high-ranking officials under the Apex Doctrine. *Id*. at *1.  The defendants opposed the motion to quash and moved to have the motion to quash transferred from the District of Columbia to the District of Puerto Rico where the underlying case was being litigated. *Id*. at *2.  The court denied the request to transfer on the ground that the legal and factual issues presented in the motion to quash did not require deep familiarity with the underlying case. *Id*. at *1. Rather, the motion to quash presented "a legal question severable from the merits of the underlying litigation." *Id*. at *3.  In this case, however, the Court is being asked to do more than determine whether the Apex Doctrine protects Ms. DeVos from deposition. It appears from Movants' argument that this Court must also determine if what Ms. DeVos has to say is even relevant to the dispute.  The court in *Galan-Alvarez* noted the difficulties that presents. *Id*. at *3 ("Ruling on the subpoenaed documents' relevance would have required the Court to delve into the intricacies of the underlying dispute. Given the close relationship between the motion to quash and the merits of the complex underlying dispute, the issuing court was in a better position to rule on the motion.").  Unlike in *Galan-Alvarez*, the motion to quash in this case is not easily separable from the merits of the underlying litigation. Because of his familiarity as the presiding judge, Judge Alsup is better positioned to assess the value of Ms. DeVos' testimony to the Plaintiffs' case. *CFA Inst. v. Am. Soc'y of Pension Pros. & Actuaries*, 2020 WL 1695050, at *2 (D.D.C. Apr. 7, 2020).

Second, Movants' argument that Plaintiffs are using this deposition subpoena for publicity or to harass Ms. DeVos is another factor weighing in favor of transfer. DE 1 at 25. When this kind of allegation is made, transfer to the issuing court is often appropriate because that judge has had the opportunity to observe how the parties and their counsel have conducted themselves over the course of the litigation. *Flynn,* 216 F. Supp. 3d at 48; *Lipman v. Antoon*, 284 F. Supp. 3d 8, 14 (D.D.C. 2018). The issuing court is therefore in the best position to determine whether a subpoena is being used for improper means. Such is the case here. The undersigned is not familiar with the parties or their history and cannot say based only on the pleadings in this case whether Plaintiffs are pursuing this deposition solely for improper means as Movants allege.

Third, Movants' argument that Ms. DeVos' deposition is outside the scope of the limited discovery topics allowed by the *Sweet* court weighs heavily in favor of transfer. On October 19, 2020, Judge Alsup entered an order identifying three specific areas in which Plaintiffs were permitted to conduct expedited discovery:

> 1. The development and use of the form denial letters…; 2. The extent to which the difficulty of reviewing borrower defense applications actually caused or justified the Secretary's eighteen-month delay; 3. The extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials.

*See* DE 12-1 at 17. Whether Ms. DeVos' deposition falls within one of those three areas is a question that requires this Court to interpret Judge Alsup's prior order, an exercise best left to the court that issued the order. *In re Managed Care Litig.*, 2020 WL 6044557, at *5 (D. Or. Oct. 13, 2020) (finding that "Judge Moreno or the SDFL would be in the best position to interpret and rule on the effect of Judge Moreno's Stipulated Order."); *E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, 2015 WL 12746706, at *4 (C.D. Cal. Oct. 23, 2015) (finding that the issuing judge was in the "best

7

position to interpret his prior orders and to determine the scope of non-party discovery in the Underlying Action."). Since Judge Alsup is the one who set the scope of discovery, he is best suited to determine whether the information Plaintiffs seek falls outside that scope.

This also applies to a second order in the underlying action. In response to a letter from Plaintiffs requesting permission to depose Ms. DeVos following her resignation, Judge Alsup issued the following short order:

> The Court appreciates class counsel's request to depose Elisabeth DeVos, but the prior order restricted deposition of "*the Secretary*" (Dkt. No. 146) (emphasis added). It imposed no such restriction regarding Citizen DeVos. Now, given her new status, if counsel pursues such deposition, it must subpoena Ms. DeVos. For that matter, the Department of Education shall please identify our new defendant. The Clerk shall then please update the caption.

DE 12-3. Plaintiffs argue that this order suggests the *Sweet* court will no longer require a finding of "extraordinary circumstances" for Plaintiffs to depose Ms. DeVos since she is no longer Secretary of the DOE. DE 24 at 6. Ms. DeVos contends that this order simply instructed Plaintiffs that they would have to proceed under Rule 45 to issue a subpoena since Ms. DeVos, in her personal capacity, is a not a party to the underlying litigation. DE 19 at 14-15. The undersigned finds that Judge Alsup, and not this Court, should resolve this dispute.

Another factor justifying transfer is that this Court's ruling on the motion to quash would greatly risk disrupting the issuing court's procedural management of the underlying litigation. In the October 19th Order Judge Alsup gave Plaintiffs until December 24, 2020 to take limited discovery. DE 12-1 at 17-18. He emphasized that discovery should move quickly. *See id*. at 16 ("In sum, we are faced with a strong showing of agency pretext and the class has been prejudiced by delay enough. We need to know what is really going on. This compels expedited discovery."). Courts have found that "[t]ransfer can be appropriate when it would avoid interference with a time-sensitive discovery schedule issued in the underlying action." *Lipman,* 284 F. Supp. 3d at 12

(quoting *Duck v. United States Sec. & Exch. Comm'n*, 317 F.R.D. 321, 325 (D.D.C. 2016) (internal quotations omitted); *Flynn*, 216 F. Supp. 3d at 48 ("The time-sensitive nature of discovery and the specific discovery procedures implemented in the underlying litigation weigh in favor of transferring the instant motion to quash."). In *Lipman*, the district court held that ruling on a subpoena-related motion two months from the close of discovery in the underlying litigation was a factor weighing in favor of transfer. *Lipman*, 284 F. Supp. at 12. Similarly, in *Flynn*, the district court there found that refusing to transfer the motion to quash approximately six weeks before the close of discovery risked disrupting the well-managed, streamlined discovery procedure in the underlying case. *Flynn*, 216 F. Supp. 3d at 48. Here, the short discovery window allowed by the issuing court likewise weighs in favor of transfer. Discovery in the *Sweet* case has been extended into April 2021. *See* DE 27-1 at 33. Any ruling issued by this Court on the motion to quash at this stage of the discovery period would likely interfere with Judge Alsup's management of the case. Further, if either party moved for reconsideration of this Court's ruling, that would present an additional delay, further disrupting the need for expediency in the case.

A ruling by this Court on the motion to quash would also risk disrupting the *Sweet* court's substantive management of the case. One specific situation which may create an exceptional circumstance is "when the issuing court has already ruled on issues presented by the [subpoena–related] motion." *Inter-Am. Dev. Bank v. Venti S.A.*, 2016 WL 5786982, at *3 (S.D. Fla. Oct. 4, 2016) (citation and internal quotations omitted); *In re Nonparty Subpoenas to PPG Indus., Inc.*, 2020 WL 1445844, at *2 (W.D. Pa. Mar. 25, 2020) ("District courts have found that … the risk of inconsistent rulings present exceptional circumstances warranting transfer to the issuing court."). Ms. DeVos and the DOE argue that situation is not present here because the issuing court has never ruled on the Plaintiffs' request to depose Ms. DeVos. DE 18 at 12-13; DE 19 at 13-15. In support,

9

they rely on *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala. 2014). In *Woods*, the court held that the risk of future overlapping rulings, standing alone, was not an exceptional circumstance warranting transfer. *Id*. The court reasoned: "This distinction is consistent with the requirement of the rule—that exceptional (i.e. unusual) circumstances exist. Most nonparty subpoenas will raise issues that are related to the underlying litigation and that are somewhat likely to require future resolution by the issuing court. If judicial efficiency is the primary concern, transfer would almost always be appropriate in order to avoid multiple rulings on the same issues."

Here, it is not just the risk of overlapping inconsistent decisions in the future that provides exceptional circumstances; it is the fact that Judge Alsup has already begun to consider the possibility of Ms. DeVos being deposed and has already started setting some chronological parameters around that request. In his October 19th Order, Judge Alsup wrote, "at *this time*, given '[h]eads of government agencies are not normally subject to deposition,' class counsel *may not yet* depose the Secretary… Extraordinary circumstances, however … may justify such a deposition *at a later date*." DE 12-1 at 17 (emphasis added). Thus, Judge Alsup has not said "no" to Plaintiffs request to depose Ms. DeVos, but instead has said "not yet." Further, Judge Alsup has already ruled that Ms. DeVos' emails must be produced. *See* DE 24 at 6 (explaining that the *Sweet* court ordered the DOE to produce Ms. DeVos' relevant emails). *See also Valle del Sol, Inc. v. Kobach*, 2014 WL 3818490, at *3 (D. Kan. Aug. 4, 2014) (where the motion to compel raised issues that were intertwined with issues already decided by the issuing court, transfer was necessary "to ensure avoidance of inconsistent discovery rulings in that case"). For the undersigned to inject a potentially conflicting ruling into the case at this point creates a real potential for disruption of the

underlying litigation. Accordingly, the undersigned finds that exceptional circumstances exist which permit transfer pursuant to Rule 45.

Having found exceptional circumstances, this Court must still weigh the burden on Ms. DeVos because the burden on local non-parties is the primary concern. Most of Judge Alsup's civil proceedings are being conducted remotely, as they are in this Court. There is therefore no practical difference between Ms. DeVos appearing before this Court or appearing before the Northern District of California. In fact, the discovery hearing held in the underlying case on February 24th was telephonic. DE 27-1. Courts have found the option of a remote appearance mitigates the burden imposed on the subpoenaed non-party by a transfer because it minimizes, if not eliminates, any travel costs. Thus, transfer is often appropriate in these cases. *United States v. 3M Co.*, 2020 WL 6587052, at *3 (S.D. Miss. Nov. 10, 2020); *In re Nonparty Subpoenas to PPG Indus., Inc.*, 2020 WL 1445844, at *4 (W.D. Pa. Mar. 25, 2020); *Exist, Inc. v. Shoreline Wear, Inc.*, 2015 WL 13694080, at *3 (S.D. Fla. Oct. 16, 2015) ("[B]ecause the Advisory Committee notes to Rule 45 encourage the court to permit telephonic participation after transfer to minimize travel costs to non-parties in these situations, the Court finds that any additional burden on [the subpoenaed non-party] associated with pursuing its motion in California will be minimal."). Moreover, Ms. DeVos' argument that a transfer order by this Court would increase the cost of litigation for her is unpersuasive. Any costs incurred by the transfer of the motion to quash are outweighed by the factors discussed above. *See*, *e.g.*, *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 430 (N.D. Cal. 2014) (finding that costs to the subpoenaed party from a transfer were outweighed by the importance of judicial economy and the consistent management of the underlying case); *Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 45 (D.D.C. 2014) (finding the cost of relitigating issues in a new district did not outweigh the extraordinary circumstances

favoring transfer, particularly when transfer would only require few modifications to the written submissions).

## **CONCLUSION**

Accordingly, Plaintiffs' Expedited Motion to Transfer Elisabeth DeVos's Motion to Quash to the Northern District of California (DE 12) is **GRANTED**. The Clerk of Court is directed to transfer this case to the United States District Court for the Northern District of California for consideration of the Motion to Quash Rule 45 Deposition Subpoena (DE 1) in the pending case *Sweet, et al. v. Rosenfelt, et al.*, Case No. 3:19-cv-03674-WHA (N.D. Cal.).

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 7th day of April, 2021.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE