**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Pierce Division**

Case No.: 2:21-mc-14073-MARTINEZ/MAYNARD

Case Pending in the U.S. District Court for the Northern District of California:
*Sweet, et al. v. Rosenfelt, et al.*, 3:19-cv-03674-ALSUP (N.D. Cal.)

IN RE SUBPOENA SERVED ON
ELISABETH DEVOS

**ELISABETH DEVOS'S EXPEDITED MOTION TO STAY THE MAGISTRATE
JUDGE'S ORDER ON THE EXPEDITED MOTION TO TRANSFER**

Jesse Panuccio
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd.
Ste. 1200
Fort Lauderdale, FL  33301
Telephone: (954) 356-0011
Email: jpanuccio@bsfllp.com

Class representatives in an Administrative Procedure Act case pending against the Department of Education have issued a third-party subpoena commanding former Secretary of Education Elisabeth DeVos to sit for a deposition in this District.  The Supreme Court has long held that, in such cases, it is "not the function of the court to probe the mental processes of the Secretary" and thus Cabinet secretaries should not be "subjected to this examination."  *United States v. Morgan*, 313 U.S. 409 (1941).  *See also In re Dep't of Commerce*, 139 S. Ct. 16, 16-17 (2018) (granting stay of order requiring deposition of Cabinet Secretary); *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019) (even where extra-record discovery is justified in APA challenge, it "did not include the deposition of the Secretary").  The rule applies fully to former Cabinet secretaries.  Accordingly, Secretary DeVos moved to quash the extraordinary subpoena in this District—the district of her residence—which is the right Rule 45 affords to protect third parties from abusive subpoenas like this one. Fed. R. Civ. P. 45 (c)(1)(a), (d)(3).  The plaintiffs in the underlying action then moved to transfer the Motion to Quash to California—a forum to which Secretary DeVos has no connection—and the Magistrate Judge yesterday granted that motion. Doc. 28 (the "Order").  But Rule 45 specifies that such transfers are to occur only in "exceptional circumstances."  Fed. R. Civ. P. 45(f).  Those circumstances do not exist here, and thus Secretary DeVos seeks to exercise her right to "serve and file objections to the order within 14 days after being served with a copy" of the Magistrate Judge's order, which the "district judge in the case must consider."  Fed. R. Civ. P. 72(a).  Yet, despite the fact that Secretary DeVos asked the Magistrate Judge to stay any transfer order to permit the orderly filing of objections, Doc. 18 at 19 n.6, the Order purports to close the case and directs the Clerk to transfer the case, which the Clerk purports to have now done.  *See* Doc. 29.

1

In light of these circumstances, Secretary DeVos seeks from the Court an immediate administrative stay of the Order so that she may exercise her right under Rule 72 to file timely objections.  A stay is warranted because; (i) Secretary DeVos is likely to succeed on the merits of her objections to the Order; (ii) the absence of a stay will cause confusion for the parties and courts involved as litigation proceeds in two districts operating under a jurisdictional cloud; and (iii) the constitutionality of a magistrate judge entering an order on a motion is premised on an Article III district judge retaining sufficient control over the action, *see Sinclair v. Wainwright*, 814 F.2d 1516, 1519 (11th Cir. 1987), and transferring the case before the District Judge exercises the mandatory review required by Rule 72(a) would raise serious constitutional questions.

Secretary DeVos respectfully requests expedited treatment of this motion pursuant to Local Rule 7.1(d)(2), and requests a ruling on or before April 12, 2021.  Expedited treatment of this stay request is necessary because Secretary DeVos has fourteen days to file objections to the Order, Fed. R. Civ. P. 72(a), and, as noted, the right to have those objections heard by the District Judge is what renders constitutional the referral of the matter to the Magistrate Judge.  But the Order purports to have immediately transferred the case out of this District, before Secretary DeVos could file her objections.  If this Court does not stay the Order and permit Secretary DeVos to exercise her right to file objections, she will have no choice but to seek relief from the Court of Appeals—and she must do so before the fourteen-day window closes.

## BACKGROUND

### A.   THE NORTHERN DISTRICT OF CALIFORNIA GRANTS LIMITED DISCOVERY IN PLAINTIFFS' SINGLE-COUNT APA ACTION

In June 2019, Plaintiffs (the "*Sweet* Plaintiffs") filed a class action complaint in the Northern District of California against the Secretary of Education (at the time, Ms. DeVos), in her official capacity, and the Department of Education (collectively, the "federal Defendants"),

challenging the Department's alleged delay in issuing "borrower-defense" decisions.  *See Sweet, et al. v. Rosenfelt, et al.*, 3:19-cv-03674-ALSUP (N.D. Cal.) (the "*Sweet* Litigation") Doc. 1, Compl. ¶¶ 377-89. [1]  Borrower-defense decisions exempt receipients of federal student loan aid from having to repay all or some of their loans under criteria prescribed by Department regulations related to the wrongful acts or omissions of the school attended by the borrower.

The Complaint asserted two APA claims, one of which was dismissed, and the other of which proceeded under § 706(1), which authorizes courts to "'compel agency action unlawfully withheld or unreasonably delayed.'"  *See id.* ¶ 380 (quoting 5 U.S.C. § 706(1)); *Sweet* Doc. 41.[2]  As relief, the Complaint sought a "simple" order compelling the Department to "start granting or denying their borrower defenses."  *Sweet* Doc. 1, Compl. ¶ 10.[3]

In April 2020, the parties executed an agreement, in which the Department agreed to issue final borrower-defense decisions according to a specified timeline.  *Sweet* Doc. 97-2.  The California court preliminarily approved the proposed settlement agreement in May 2020, *Sweet* Doc. 103.  In the meantime, the Department continued to issue final borrower-defense decisions (both approvals and denials).  *See Sweet* Doc. 116.  On September 17, 2020, however, the *Sweet* Plaintiffs moved not only for final approval of the agreement, but also to enforce it.  *Sweet* Doc. 129.  Specifically, the *Sweet* Plaintiffs took issue with the substance of certain denial (but not approval) notices, and claimed that these notices provided insufficient reasoning.  *Id.*

---

[1] Citations to filings in the *Sweet* Litigation are referred to as "*Sweet* Doc.," whereas citations to filings in this Court are referred to as "Doc."  Page numbers refer to the pagination assigned by the ECF system, not to internal pagination.

[2] After serving their subpoena on Secretary DeVos, the *Sweet* Plaintiffs filed a motion seeking leave to file a new complaint.  *Sweet* Doc. 192.

[3] The California court certified a class consisting of all people who borrowed a qualifying Title IV loan "who have asserted a borrower defense to repayment," and "whose borrower defense has not been granted or denied on the merits," while carving out members of a separate class action. *Sweet* Doc. 46 at 14.  The Complaint's second count was dismissed in 2019.  *Sweet* Doc. 41.

The California court denied final approval of the settlement agreement, concluding that the parties had failed to reach a meeting of the minds on what constitutes a "final decision." *Sweet* Doc. 146 at 7-10.  Further, the California court  ordered a two-month "expedited discovery" period on three discrete topics, at the end of which "the class shall move for summary judgment as to the lawfulness of the Secretary's delay, and the lawfulness of the perfunctory denial notice." *Sweet* Doc. 146 at 16.[4] *Id.* at 16-17.  In addition, the California court allowed the *Sweet* Plaintiffs to take written discovery and up to "five fact depositions of relevant decisionmakers" from offices "within the Office of the Under Secretary."  *Id.*  The court noted that "'[h]eads of government agencies are not normally subject to deposition," and thus did not address whether such a deposition would be permissible at a later date, if sought.  *Id.* at 16.

Nearly three weeks after the October 19 discovery order, the *Sweet* Plaintiffs served the federal Defendants with forty-nine requests for production and twenty interrogatories.  The federal Defendants responded to the *Sweet* Plaintiffs' first and second sets of interrogatories on December 7 and 10, 2020, respectively; made a substantial production of documents on December 23, 2020; and supplemented their interrogatory responses and document production on January 14, 2021. The *Sweet* Plaintiffs noticed and conducted only four of the five authorized depositions.

**B.    PLAINTIFFS DEMAND TO SUBPOENA SECRETARY DEVOS WITH NO ATTEMPT TO REACH AN ALTERNATIVE SOLUTION**

On January 6, 2021, the *Sweet* Plaintiffs informed the federal Defendants by telephone that they intended to seek to depose then-Secretary DeVos. *Sweet* Doc. 171 at 5.  The next day, January

---

[4] The initial deadline for completing discovery was December 24, 2020, but the court subsequently entered an order allowing the federal Defendants to complete their production of documents by January 14, 2021. *Sweet* Doc. 170 at 2.  On February 24, 2021, the California court extended document discovery at least through the end of April, and potentially for a "subsequent time period" after that.  Doc. 27-1 at 31.  At the request of all parties, the California court moved its status conference on that ongoing discovery to May 20, 2021. *Sweet* Docs 194, 195.

7, the federal Defendants sent the *Sweet* Plaintiffs a letter requesting "precisely the information that you seek to solicit from the Secretary that you have not been able to obtain elsewhere," and stating that they were "open to exploring other, less intrusive means of providing your requested discovery." *Id.* The federal Defendants pointed out that the *Sweet* Plaintiffs had taken only four of their five available depositions, and that the federal Defendants would be "open to further conferring about a different deponent who might have relevant knowledge." *Id.* The *Sweet* Plaintiffs also have never taken a 30(b)(6) deposition as to any information they are allege is missing. The federal Defendants also pointed out that the parties had seven days to work out any differences relating to the federal Defendants' responses to interrogatories. *Id.* Later that evening, Secretary DeVos announced her resignation, which was effective the next day.

The *Sweet* Plaintiffs responded to the federal Defendants' letter the next day, January 8, asserting that the four Department officials they deposed "all left holes that can only be filled by Secretary DeVos's personal knowledge" on topics "including but not limited to" (1) "[t]he development and approval of" the form denial notices; (2) "[w]ho ordered FSA to stop issuing borrower defense decisions" and why; and (3) "Borrower Defense Policy." *Sweet* Doc. 171 at 8-9 (emphasis omitted). The *Sweet* Plaintiffs acknowledged that the parties had agreed that the federal Defendants would let the *Sweet* Plaintiffs know by January 14 whether they would supplement their response to Interrogatory No. 16, which is similar to the *Sweet* Plaintiffs' first proposed deposition category for Secretary DeVos. *Id.* at 9; *see also id.* at 1 & n.2. But the *Sweet* Plaintiffs stated that their desire to depose now-former Secretary DeVos "would not be satisfied by a more fulsome response to Interrogatory No. 16." *Id.* at 9. The *Sweet* Plaintiffs' letter concluded by giving the federal Defendants less than twenty-four business hours to respond. *Id.*

The federal Defendants responded the next business day, January 11, and informed the *Sweet* Plaintiffs that the Department was exploring whether it could provide the information Plaintiffs sought through less intrusive means.  *Sweet* Doc. 171 at 11.  The federal Defendants requested a "reasonable amount of time for the Department to continue this investigation."  *Id.* Two-and-a-half hours later, the *Sweet* Plaintiffs responded with a letter stating that they had "given you enough time to consider our request," and that "today we will move the Court accordingly." *Sweet* Doc. 171 at 14.  Less than two-and-a-half hours later, the *Sweet* Plaintiffs filed a letter brief with the California court seeking leave to take former Secretary DeVos's deposition, followed by a press release.  *Sweet* Doc. 171.[5]

The California court rejected the request, explaining that because "Citizen DeVos" is a private party, the *Sweet* Plaintiffs could only pursue a deposition through a Rule 45 subpoena. Doc. 12-3.  On January 13, counsel for the *Sweet* Plaintiffs asked DOJ counsel to accept email service of the third-party subpoena on former Secretary DeVos's behalf.  Doc. 12-4 at 4.  Ms. DeVos authorized DOJ counsel to agree on the condition that the parties "negotiate the subpoena's place of compliance and a reasonable compliance date that would allow sufficient time for motion-to-quash briefing and a decision," terms to which the *Sweet* Plaintiffs agreed.  *Id.* at 2–3.

On January 19, the *Sweet* Plaintiffs stated they were "happy to negotiate a date that allows for briefing as necessary."  *Id.* at 2.  On January 22, the parties agreed that, in accordance with Rule 45, the *Sweet* Plaintiffs would require compliance with the subpoena in Vero Beach, Florida, where Secretary DeVos maintains a residence and where she would be residing on the compliance

---

[5] *See* Press Release, Student Borrowers Ask Court to Allow Deposition of Betsy DeVos on Borrower Defense (Jan. 11, 2021), https://predatorystudentlending.org/news/press-releases/student-borrowers-ask-court-to-allow-deposition-of-betsy-devos-on-borrower-defense-press-release/ (last visited Feb. 8, 2021).

date specified in the subpoena.  *See id.* at 2; Doc. 1-1 at 2.  DOJ counsel explicitly noted that the Motion to Quash would be forthcoming, and the parties agreed "to stay any compliance date pending a final order" in order "to account for the significant possibility that necessary litigation [surrounding the Motion to Quash] will not be complete by February 25, 2021."  Doc. 12-4 at 2.

   1.   **Secretary DeVos and the Department Move to Quash, and *Sweet* Plaintiffs Move to Transfer While Also Briefing the Motion to Quash**

   Secretary DeVos, joined by the federal Defendants, filed a Motion to Quash the subpoena on February 8, 2021.  Doc. 1.  The Motion to Quash argues that the subpoena against Secretary DeVos must be quashed under *Morgan* and the apex doctrine.  Doc. 1 at 18–25.  Under *Morgan*, "it is not the function of the Court to probe the mental processes of the Secretary" in APA cases. 313 U.S. at 422.  But even if *Morgan's* blanket prohibition did not apply, the *Sweet* Plaintiffs would still have to satisfy the apex doctrine, under which "a district court should rarely, ***if ever***, compel the attendance of a high-ranking official in a judicial proceeding." *In re United States (Jackson)*, 624 F.3d 1368, 1376 (11th Cir. 2010) (emphasis added).  In order to overcome the apex doctrine, a party propounding a subpoena must demonstrate that "extraordinary circumstances" justify the deposition.  *See, e.g., FDIC v. Galan-Alvarez*, No. 1:15-MC-00752, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015).  Extraordinary circumstances have been found to exist only where it is shown that "'the official has *unique* first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.'" *Id.* at *3 (quoting *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)) (emphasis added).  Thus, to satisfy the apex doctrine, the party seeking a deposition must make two distinct showings: first, that the information sought "is not obtainable from another source," and second, that it is "essential to his case." *In re United States (Holder)*, 197 F.3d 310,

7

313-14 (8th Cir. 1999) (requiring a showing that "the discovery sought [from the high-level government official] is relevant and necessary").

In lieu of filing an immediate response to the Motion to Quash, the *Sweet* Plaintiffs filed a seventeen-page Expedited Motion to Transfer, which addresses the substance of the Motion to Quash. *See* Doc. 12 (the "Motion to Transfer"). The *Sweet* Plaintiffs requested expedited treatment even though they had agreed "to negotiate a date that allows for briefing as necessary" and to stay compliance with the subpoena "to account for the significant possibility that necessary litigation [surrounding the Motion to Quash] will *not* be complete by February 25." Doc. 12-4 at 2, 4.[6] The Magistrate Judge granted the motion to expedite briefing on the Motion to Transfer, Doc. 13. Docs 18, 19, 24. Meanwhile, the *Sweet* Plaintiffs filed an opposition to the Motion to Quash and Secretary DeVos replied. Docs 23, 26, 27.

The *Sweet* Plaintiffs' attempt to depose Secretary DeVos has been accompanied by a publicity campaign, *see* Doc. 1 at 10 & n.6, which has continued with the litigation surrounding the Motion to Quash and Motion to Transfer. Indeed, counsel for the *Sweet* Plaintiffs has even offered quotations for an article that calls this Court the "notoriously anti-government transparency Southern District of Florida," that uses an anonymous "source familiar with the litigation" to criticize the Motion to Quash, that claims Secretary DeVos "long ago forfeited the benefit of … norms" that protect former Cabinet officials, and that criticizes both undersigned counsel and DOJ counsel for defending the well-established legal principles barring abusive depositions of former Cabinet officials.[7]

---

[6] The *Sweet* Plaintiffs request for expedition was based on a pending discovery deadline, which they subsequently convinced the California court to extend. The *Sweet* Plaintiffs never informed this Court that the basis of their request had evaporated. *See* Doc. 27-1 at 32.

[7] The *Sweet* Plaintiffs now feature this article on their publicity website for this case. *See* Legal Services Center of Harvard, Project on Predatory Student Lending, *Sweet v. DeVos*,

### 2.      The Magistrate Judge's Order

On April 7, 2021, the Magistrate Judge granted the Motion to Transfer.  Doc. 28.  The Order holds that exceptional circumstances existed to warrant the transfer of the Motion to Quash to the California court.  *Id.* at 5.  The Order finds that the California court is in a better position to address the parties' arguments on the Motion to Quash than this Court.  *Id.* at 5–8.  In addition, the Order finds that ruling on the Motion to Quash risked disrupting the California court's procedural and substantive management of the *Sweet* Litigation.  *Id.* at 8–10.  The Order also finds that the California court already began to consider whether Secretary DeVos could be deposed.  *Id.* at 10–11.  And the Order concludes that any burdens placed on Secretary DeVos by granting the Motion to Transfer were outweighed by the other considerations discussed in the Order.  *Id.* at 11–12.  The Order directs that the case is closed and the Clerk to transfer the case to the Northern District of California.  The docket now reflects that this has been done.  Doc. 29.

## ARGUMENT

### A.      Legal Standard

When addressing a request to stay an order pending appeal, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018).  A stay also may be granted upon a showing of a "substantial case on the merits" and that the other factors weigh in favor of granting the stay.  *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

---

Coverage, https://predatorystudentlending.org/cases/sweet-v-devos/#Sweet-coverage (linking to https://lawandcrime.com/high-profile/biden-admin-teams-up-with-ex-trump-doj-official-to-defend-betsy-devos-against-ripped-off-college-students/) (last visited Feb. 21, 2021) (Doc. 19-2).

**B.      Secretary DeVos is Likely to Succeed on the Merits.**

Secretary DeVos is likely to succeed on the merits of her appeal of the Order.  Under Fed.

R. Civ. P. 72(a), a district court reviewing a magistrate judge's order shall modify or set aside the

order if it is "found to be clearly erroneous or contrary to law."  *See also* 28 U.S.C. § 636(b)(1)(A);

L. Magistrate R. 4(a)(1).  A magistrate judge's order is clearly erroneous where "the reviewing

court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a

mistake has been committed."  *Zamber v. Am. Airlines, Inc.*, No. 16-23901-CV, 2020 WL

1445479, at *1 (S.D. Fla. Feb. 11, 2020).  And a magistrate judge's order "is contrary to law when

it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Tolz v. Geico Gen.

Ins. Co.*, No. 08-80663-CIV, 2010 WL 384745, at *2 (S.D. Fla. Jan. 27, 2010).  Respectfully, in

granting the Motion to Transfer, the Magistrate Judge clearly erred and misapplied the law.

Rule 45 permits a third-party subpoena to be enforced only "within 100 miles of where the

person resides," prohibits the issuing party from "imposing undue burden or expense on a person

subject to the subpoena," and requires that the "court for the district *where compliance is required*

must enforce this duty."  Fed. R. Civ. P. 45(c)(1)(A), (d)(1) (emphasis added).  Accordingly, "the

court for the district where compliance is required must quash or modify a subpoena that …

subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).

The only exception is that when "the court where compliance [with a subpoena] is required

did not issue the subpoena, it *may* transfer a motion … to the issuing court … if the court finds

***exceptional circumstances***."  Fed. R. Civ. P. 45(f) (emphasis added).  Thus, transfer is to be a

"rare event" and "unusual."  9A Charles Alan Wright, et al., Federal Practice & Procedure § 2451

(3d ed. April 2016 Update); 9 James Wm. Moore, et al., Moore's Federal Practice § 45.50[4] (3d

ed.).  As explained by the Advisory Committee Notes to Rule 45(f), the "prime concern should be

avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the

issuing court is in a superior position to resolve subpoena-related motions."  The only circumstance identified is where it is warranted to "avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."  Fed. R. Civ. P. 45(f), Advisory Committee's Notes (2013).

The proponent of transfer bears the burden of establishing these exceptional circumstances. *Id.*  If the transfer proponent fails to carry that burden, the inquiry is at an end.  In other words, "exceptional circumstances must first be found before any balancing takes place.  The lack of a burden imposed on the nonparty by transfer is not in itself an exceptional circumstance and is insufficient to warrant transfer."  *Woods ex rel. United States v. SouthernCare, Inc.*, 303 F.R.D. 405, 407 (N.D. Ala. 2014).

Even if exceptional circumstances are found, transfer is discretionary ("may transfer") and "is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion."  Fed. R. Civ. P. 45(f), Advisory Committee Notes (2013).  *See Inter-Am. Dev. Bank v. Venti S.A.*, No. 16-MC-21016, 2016 WL 5786982, at *3 (S.D. Fla. Oct. 4, 2016); *Woods*, 303 F.R.D. at 406–07.  In conducting this balancing, every consideration must be given to the subpoenaed nonparty: "The ***prime concern*** should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions."  Fed. R. Civ. P. 45(f), Advisory Committee Notes (2013) (emphasis added).

### 1. There are No Exceptional Circumstances That Justify Transfer.

The Order's conclusion that exceptional circumstances justify transferring the Motion to Quash misapplies Rule 45(f) and rests on clear errors.  The circumstances identified in the

Advisory Committee notes do not apply—*i.e.,* the California court has not ruled on the issues presented by the Motion to Quash and the same issues are not going to arise in discovery in multiple districts.

First, the Order asserts that there could be disruption because the California court "has already begun to consider the possibility of Ms. DeVos being deposed." Doc. 28 at 9–11. The Order refers to the fact that the California court left open the possibility that the deposition could be warranted at a later date *if* the required showing could be met. To the contrary, "the Advisory Committee's note only identifies resolution of a motion as disruptive of the underlying litigation if the issuing court has *already* ruled on the issues, not if it might or will rule on them in the future." *Woods*, 303 F.R.D. at 408. *See also Inter-Am. Dev. Bank*, 2016 WL 5786982, at *3 (transfer appropriate "when the issuing court has *already* ruled on issues presented by the [subpoena–related] motion.") (emphasis added). There is no dispute that the California court has not ruled on the *Sweet* Plaintiffs' subpoena generally or the Motion to Quash specifically. Doc. 12 at 12 (*Sweet* Plaintiffs admitting that "the California court has not directly ruled on the validity of the January 26, 2021 subpoena"). Transfer therefore should have been denied for this reason alone, *see Woods*, 303 F.R.D. at 408 (collecting cases refusing transfer when these specific circumstances are not present). Doc. 28 at 9–11.[8]

The Order otherwise relies primarily on the kinds of issues that courts routinely resolve on records far more complicated than the one at issue here. In particular, the Order finds that the

---

[8] There is no basis for the Order's suggestion that this Court must interpret the California court's five-line order, Doc. 12-3, stating that it had no authority to order a deposition of "Citizen DeVos." Doc. 12 at 12–13. There is no dispute that the California court has not ruled on the permissibility of this deposition. Doc. 24 at 6 (*Sweet* Plaintiffs admitting that they "nowhere contend that [the California court] has *already* ruled on the applicability of the apex doctrine to Ms. DeVos") (emphasis added).

California court is in a better position to decide the issue of the relevance of Secretary DeVos's testimony and whether Secretary DeVos has unique knowledge.  Doc. 28 at 5–6.  To the contrary, issues of relevance are always pertinent in discovery and a central part of the undue burden inquiry that is one of the specified grounds for quashing a subpoena.  Further, the question of whether the target of a subpoena possesses unique knowledge concerning particular topics is the central inquiry under the apex doctrine and not unique to the *Sweet* Litigation.  If anything, a case involving a limited scope of discovery is easier to address than one involving a broader range of topics, particularly where, as here, the Order identifies nothing difficult to understand or ambiguous about the three topics that the California court has identified.

Such an inquiry also is no more complicated or "exceptional" than the standard "undue burden" framework that applies to all third-party subpoenas in discovery records far more voluminous than an APA case involving limited discovery.  Indeed, the court in *Galan-Alvarez* denied the motion to transfer despite the fact that the court overseeing the underlying litigation had entered *two* discovery orders that potentially implicated the proposed subpoena.  2015 WL 5602342, at *2.  Were it otherwise, apex doctrine issues would invariably lead to transfer, thereby making Rule 45's protections essentially unavailable to high-level officials—*i.e.*, the polar opposite of what is called for by a doctrine designed to alleviate the burdens on such officials.

The Order's attempt to distinguish *Galan-Alvarez* underscores this point.  The Order states that *Galan-Alvarez* did not involve investigating the relevance of a subpoena targets' testimony, Doc. 28 at 6, but in fact, the court both denied the motion to transfer and granted the motion to quash under the apex doctrine because the parties propounding the subpoena failed to show that the subpoena targets had "unique knowledge relevant to the underlying litigation."  2015 WL 5602342, at *1.

The Order also errs in suggesting that this Court ruling on the Motion to Quash would somehow upset the "short discovery window" in the *Sweet* Litigation. The Motion to Quash has been fully briefed since March 1, 2021, Docs 26, 27, and this Court is capable of ruling on that motion just as quickly as the California court (and could have already done so, in lieu of issuing the Order). If anything, because the Motion to Quash is based, in part, on Eleventh Circuit and Southern District of Florida precedent, transferring the Motion to Quash to the California court will necessitate new briefing on the motion and lead to increased delay. The most expeditious way to resolve the Motion to Quash is for this Court to rule on it. Further, the Order overstates the "short discovery window" at issue in the California court. Earlier this week, at the request of the parties in the *Sweet* Litigation, the California court extended its discovery status conference to May 20, 2021. Docs 194, 195.

The Motion to Transfer also itself has led to delay in resolving the motion to quash. The *Sweet* Plaintiffs may not rely on self-inflicted delay caused by their own motion to justify granting it. Indeed, given the lack of any real efficiency justification, the *Sweet* Plaintiffs' motion is better explained by the desire to avail themselves of their preferred forum, for reasons that remain unexplained.

Similarly, the Order incorrectly relies on the fact that the *Sweet* Plaintiffs are using the subpoena of Secretary DeVos for purposes of publicity and harassment as a factor justifying transfer. Doc. 28 at 7. Again, issues surrounding abusing subpoenas of high-ranking government officials is bound up in *Morgan* and the apex doctrine. As courts have long recognized, without the apex doctrine, high-ranking government officials would face "a tremendous potential for abuse or harassment" via an endless stream of subpoenas involving actions taken during their tenure. *K.C.R. v. Cty. of Los Angeles*, No. CV 13-3806, 2014 WL 3434257, *3 (C.D. Cal. July 11, 2014)

(citation omitted).  *See also Gray v. Kohl*, No. 07-10024-CIV, 2008 WL1803643, at \*1 (S.D. Fla. Apr. 21, 2008) ("[Courts] generally restrict parties from deposing high ranking officials lacking personal knowledge of the issues being litigated because they are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.").  Thus, that this Court may be asked to consider the harassment surrounding the subpoena of Secretary DeVos is not exceptional.

Finally, cases relied on by the Magistrate Judge only undermine the Order's conclusion because they involve far greater complexity than the current one as well as the specific circumstances identified in the Advisory Committee notes.  *Wultz v. Bank of China, Lt*d, 304 F.R.D. 38, 46 (D.D.C. 2014), for example, involved a subpoena of an Israeli intelligence agent involving two sovereigns, highly sensitive issues of sovereign immunity, and the precise issue identified in the Advisory Committee notes—a decision that would implicate multiple ( no fewer than six) state and federal proceedings.  *E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, 2015 WL 12746706, at \*3–4 (C.D. Cal. Oct. 23, 2015), likewise involved the precise "exceptional circumstances" discussed in the Advisory Committee notes when "the same issues are likely to arise in discovery in many districts."   The court in *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 35 (D.D.C. 2014), found that the court overseeing the underlying litigation had "already ruled on issues presented by the motion."  *Patriot Nat. Ins. Grp. v. Oriska Ins. Co.*, 973 F. Supp.2d 173, 176 n.2 (N.D.N.Y. 2013), was decided before Rule 45(f) went into effect and thus does not even purport to apply the "exceptional circumstances" analysis.  And none of the decisions cited by the Order and approving transfer involved the apex doctrine.

**2.     The Burden on Secretary DeVos Outweighs Any Benefit of Transfer.**

Because there are no exceptional circumstances justifying transferring the Motion to Quash, there was no need to conduct the balancing that is the next step in the analysis where the threshold exceptional circumstances are present.  *Woods*, 303 F.R.D. at 407.  But the Order also misapplied that step of the analysis by improperly discounting the burden on Secretary DeVos. The Order primarily relies on the availability of remote appearances in the California court to discount any burden that Secretary DeVos would face as a result of transferring the Motion to Quash.  Doc. 28 at 11–12.  But such electronic appearances are always available for depositions, *see* Fed. R. Civ. P. 30(b)(4), which means a party seeking transfer could always obviate Rule 45's protections for non-parties if it so chose.  Moreover, such remote appearances do not alleviate the expense and burden of supplemental briefing in the California court and of the possible need to use additional counsel.

Further, as discussed in the prior section, the Order's rationale is at odds with the apex doctrine because it would freely allow for transfer for the very Cabinet officials that the apex doctrine is designed to protect.  The high burden for establishing the need to depose a Cabinet official would itself become the rationale for why a case is exceptional, and the arguments relied upon in the Order to justify transferring the Motion to Quash could be made *every* time a former agency head is subpoenaed in a case that continues after he or she leaves government.  This would turn the apex doctrine on its head.  *Gray*, 2008 WL 1803643, at *1.  If the very purpose of the apex doctrine is to provide these officials protection—if courts "should rarely, if ever, compel the attendance" of a former Cabinet secretary for a deposition, *In re United States (Jackson)*, 624 F.3d at 1376—it follows that courts should be equally hesitant to ignore the burden-reducing mechanism of Rule 45, which calls for local resolution in all but rare and unusual circumstances.

16

9A Charles Alan Wright, et al., Federal Practice & Procedure § 2451 (3d ed. April 2016 Update);

9 James Wm. Moore, et al., Moore's Federal Practice § 45.50[4] (3d ed.).[9]

## C.    A Stay Will Avoid Irreparable Harm to Secretary DeVos and Provide Helpful Certainty for the Two Courts Involved.

Because immediately transferring the Motion to Quash to the California court risks depriving Secretary DeVos of her right to file objections to a Magistrate Judge's order, this Court should stay the Order pending resolution of those objections.  Further, a stay would foster certainty for both courts involved and benefit all legitimate interests concerned.

Under Rule 45, it was proper for Secretary DeVos to file her Motion to Quash in this judicial district.  *See* Fed. R. Civ. P. 45(c)(1)(A), (d)(1), (d)(3)(A)(iv).  The *Sweet* Plaintiffs thus filed the Motion to Transfer in *this Court*, for a decision by *this Court*.  While the Local Magistrate Judge Rules permit a non-Article III magistrate judge to enter an order in the first instance, such a procedure is constitutional only because an Article III district judge retains sufficient control. *See, e.g.*, *Sinclair*, 814 F.2d at 1519; *Wharton-Thomas v. United States*, 721 F.2d 922, 927-28 (3d Cir. 1983).  That control comes in the form of Rule 72(a), which provides Secretary DeVos the right to "serve and file objections to the order within 14 days after being served with a copy" of the Order and states that the "***district judge*** in the case ***must consider*** timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a) (emphasis added).  The Court is obliged to follow these Rules.  *See Hollingsworth v. Perry*, 558

---

[9] For the same reasons that Secretary DeVos has shown a likelihood of success, she also has made the less demanding showing of a substantial case on the merits of her appeal.  *See Kowalski v. Jackson Nat'l Life Ins. Co.*, No. 12-60597-CIV, 2014 WL 11531364, at *2 (S.D. Fla. Jan. 22, 2014); *Am. Ass'n of People with Disabilities v. Hood*, No. 3:01CV1275-J, 2004 WL 1041536, at *1 (M.D. Fla. Apr. 16, 2004) (party established "a substantial case on the merits" where the issue was "difficult" and "heavily litigated"); *Gonzalez ex rel. Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000) (granting motion to stay pending appeal where plaintiff presented "a substantial case on the merits" and "[n]o one should feel confident in predicting the eventual result in this case").

U.S. 183, 196 (2010) ("The Court's interest in ensuring compliance with proper rules of judicial administration is particularly acute when those rules relate to the integrity of judicial processes.").

Yet the Order purports to both transfer the Motion to Quash and close this case before Secretary DeVos has had an opportunity to file her objections and the District Judge *in this Court* has had an opportunity to rule upon them. Doc. 28 at 12. Indeed, the Order purports to take these actions despite the fact that the opposition to the Motion to Transfer requested that the execution of an order to transfer be delayed until after Movants had the opportunity to determine whether to file such objections. Doc. 18 at 19 n.6. By effectuating a transfer to the California court and closing the case, the Order undermines the very Article III oversight that renders the Federal Magistrates Act and this Court's Local Rules constitutional. By staying the Order pending appeal, this Court will prevent Secretary DeVos from losing her constitutional right to have an Article III judge decide the transfer motion. Denial of a constitutional right is unquestionably an irreparable harm. *See Gayle v. Meade*, 2020 WL 3041326, at *20 (S.D. Fla. June 6, 2020).

In addition, because a failure to stay the Magistrate Judge's Order pending an appeal "will result in costs irrevocable, both of time and of money," to Secretary DeVos, *see Garcia-Mir*, 781 F.2d at 1456, this Court should stay the Order pending appeal. Transferring the Motion to Quash to the California court will require Secretary DeVos to bear the expense and burden of supplemental briefing on Ninth Circuit law and of potentially engaging additional counsel. And if this Court later reverses the Order, Secretary DeVos may be unable to recover the time and money spent litigating in the Northern District of California.

**D.     The *Sweet* Plaintiffs Will Not Be Prejudiced By a Stay.**

The *Sweet* Plaintiffs will not be meaningfully prejudiced by such a stay. Before the subpoena for Secretary DeVos was even issued, the *Sweet* Plaintiffs agreed to stay the subpoena pending a final order on the Motion to Quash. Doc. 12-4. Moreover, the *Sweet* Plaintiffs have

been content to repeatedly extend discovery deadlines in their case, despite their representations to this Court about the need for haste.[10]  Indeed, all of the time periods by which the *Sweet* Plaintiffs have asserted they need a decision on the Motion to Transfer are no longer relevant.  For example, the *Sweet* Plaintiffs asked for a decision on the Motion to Transfer on or before February 23, 2021 in order to have the Motion to Quash decided by the California court during a hearing on February 24, 2021.  Doc. 12 at 2.  The date of that hearing has since come and gone.  In addition, the *Sweet* Plaintiffs expressed a need to obtain a decision on the Motion to Transfer before the deadline for their opening summary judgment brief in the *Sweet* Litigation on March 11, 2021.  *Id.*  But the California court has since continued the due date for the opening brief in support of summary judgment to a date to be determined by that court.  *Sweet* Doc. 191 at 3–4.  Thus, there are no existing deadlines by which either the Motion to Transfer or the Motion to Quash must be decided.

**E.**    **A Stay Will Serve the Public Interest.**

Because the Order implicates the protections afforded to former Cabinet officials and, consequently, the societal interest in encouraging would-be public servants to accept Cabinet positions, the public interest is served by staying the Order for considered review.  *See In re Freedom Unlimited*, 2020 WL 5706497, at *9 (S.D. Fla. Sept. 24, 2020) (in analyzing the "public interest" factor, "courts focus on whether the stay would promote the uniformity of the laws or the interests of third parties").  At the heart of the Motion to Quash is the applicability of *Morgan* and the apex doctrine, which encourage and protect public service.  *See United States v. Wal-Mart*

---

[10] The *Sweet* Plaintiffs expressed no concern about expeditiously deciding the Motion to Quash if their Motion to Transfer was not decided on or before February 23, 2021.  To the contrary, they asked the Magistrate Judge to continue the due date for their opposition until seven days after the Magistrate Judge decided the Motion to Transfer if the latter motion was not decided on or before February 23, 2021.  Doc. 12 at 3.  Thus, before they knew the outcome of the Motion to Transfer, the *Sweet* Plaintiffs displayed a lack of concern over expeditious *briefing* on the Motion to Quash, let alone an expeditious decision.

*Stores, Inc.*, 2002 WL 562301, at \*3 (D. Md. Mar. 29, 2002) ("the indiscriminate depositions of high-ranking government officials would be unduly burdensome upon said officials and likely discourage them from accepting positions as public servants").   The societal interest in encouraging public service is thus also implicated in motions to transfer subpoena-related motions concerning high-ranking government officials.   As expressed above, if the very purpose of the apex doctrine is to provide these officials protection—if courts "should rarely, if ever, compel the attendance" of a former Cabinet secretary for a deposition, *In re United States (Jackson)*, 624 F.3d at 1376—it follows that courts should be equally hesitant to ignore the burden-reducing mechanism of Rule 45, which calls for local resolution in all but rare and unusual circumstances. And, as explained, the arguments relied upon in the Order to justify transferring the Motion to Quash could be made *every* time a former agency head is subpoenaed in a case that continues after he or she leaves government.

## CONCLUSION

Elisabeth DeVos respectfully requests that this Court enter an administrative stay of the April 7, 2021 Order by the Magistrate Judge granting the *Sweet* Plaintiffs' Expedited Motion to Transfer (Doc. 28) pending review of that Order by the District Judge.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(B), I certify that counsel for Secretary DeVos has conferred or attempted to confer with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised by the attached motion and have been unable to do so.  Undersigned counsel conferred with DOJ counsel.  Undersigned counsel sent an email to counsel for Sweet Plaintiffs at 4:48 pm EDT (1:48 pm PDT) and has not received any response by the time of filing, 8:00 pm EDT (5:00 pm PDT).

Dated: April 8, 2021                           Respectfully submitted,

                                               s/ *Jesse Panuccio*

                                               Jesse Panuccio
                                               Boies Schiller Flexner LLP
                                               401 E. Las Olas Blvd.
                                               Ste. 1200
                                               Fort Lauderdale, FL  33301
                                               Telephone: (954) 356-0011
                                               Email: jpanuccio@bsfllp.com

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on April 8, 2021, the foregoing Expedited Motion to Stay was served on all parties to this action using the CM/ECF electronic filing system.

 s/ *Jesse Panuccio*
Jesse Panuccio